NELSON J. BEACH, receiver &c. *v.* GEORGE W. SMITH.

S. subscribed for $500 of stock in a railroad company, upon the understand-
ing that the first ten per cent required by law to be paid in cash on sub-
scribing, should be paid by his services in procuring subscriptions and
right of way. He subsequently presented an account against the com-
pany for services, from which it appeared that at the date of the subscrip-
tion the company was indebted to him in an amount greater than the cash
payment required, in which account he applied and credited fifty dollars
for ten per cent upon his subscription, and fifty dollars for the first
call made thereon. The account was allowed by the company, and the
balance paid to S. *Held*, that this was a sufficient compliance with the
statute, in respect to the payment of the first ten per cent, and made the
subscription obligatory upon S.

·‑THIS action was brought by the plaintiff as receiver of
the Ogdensburgh, Clayton & Rome Railroad Co., to recover
the balance due to that company upon the defendant's sub-
scription to the capital stock thereof. The facts found by
the judge who tried the cause are: That the company
was duly incorporated under the laws of this State, and
its articles were duly filed on the 16th of April, 1853;
that afterwards, on the 2d day of July, the defendant sub-
scribed the subscription book and articles of association,
and by said subscription agreed to pay said corporation
the sum of five hundred dollars, being for five shares of
the stock, as the same should from time to time be called
for; that the defendant did not at the time of subscribing,
make any payment upon said subscription to said corpora-
tion, and had no funds of said company in his hands; that
afterwards, and about October 31, 1853, the directors of
said corporation made four calls of ten per cent upon the
subscriptions to the capital stock of the said company,
payable respectively February 1, 1854, May 1, 1854.
August 1, 1854, and November 1, 1854; and that about
the 26th day of October, said directors made two other

calls upon the subscriptions to said capital stock, payable respectively February 1, 1855, and November 1, 1855, of all which calls the defendant had due notice; that on the 25th of February, 1854, the defendant presented his accounts for services for said company in procuring subscriptions and right of way as agent of said company, subsequent to said subscription, from April 1, 1853, and which was dated February 25, 1854, and amounted to the sum of $410. And upon said account applied and credited several sums of cash received by him subsequent to his said subscription, for subscriptions of various persons to the capital stock of the company, and also credited therein fifty dollars for ten per cent upon his said subscription, and also fifty dollars for the first installment or call upon his subscription, payable February 1, 1854, and leaving after the application of such payments and credits, the sum of two hundred dollars due to said defendant by the company, which balance was paid to said defendant by the company; and that it was the agreement and expectation and design of the defendant and of the company's agent, at the time of subscribing, that the first ten per cent required to be paid in cash on subscribing, should be paid by the defendant's services thereafter, and was in fact paid in that manner only, in pursuance of such agreement. The judge held as matter of law, that the application of the defendant's account for services, upon his said subscription, was a sufficient compliance with the statute in respect to payment of the first ten per cent, and made the said subscription obligatory upon him. Judgment upon the trial was given for the balance due upon said subscription, and the same was affirmed at the general term, and the defendant appealed to this court.

*G. W. Smith*, appellant, in person.

I. The ten per cent. not being paid at the time of making the subscription, the attempted contract was illegal and

void, and no action can be maintained upon it. (1 R. S. 1222, § 4, 4th ed.; Laws of 1850, chap. 140, § 4; *Crocker* v. *Crane*, 21 Wend. R. 211; *Jenkins* v. *Union Turnpike Company*, 1 Caines' Ca. 86; Angell & Ames on Corporations, chap. 8, § 12; *Safford* v. *Wyckoff*, 4 Hill, 444–7.)

1. The contract is illegal and void because it is against the express prohibition of the statute. The statute is not merely directory. It first says that the ten per cent. shall be paid at the time of subscribing, and then that the subscription shall not be received or taken unless the ten per cent. be so paid. Negative words in a statute are imperative. (7 Wend. R. 31, and cases cited p. 34.) It is believed no case can be found where an action has been sustained which goes in affirmance of an illegal contract, when its object is to enforce the performance of an engagement prohibited by law." (20 J. R. 397; Smith on Stat. 780; Broom's Legal Maxims, 350; *Rex* v. *Leicester*, 7 Barn. & Cress. 12; *Bank of United States* v. *Dandridge*, 12 Wheat. Rep. 878.) Where it is held that a by-law requiring a cashier to give "approved securities," &c., is directory, but where it is conceded that "if the statute had prescribed that the cashier should not be deemed for any purpose in office until such approval, his acts would have been utterly void." Without the cash payment in this case there is no subscription, as in the case above there would be no officer. "In deciding whether a corporation can make a particular contract, we are to consider, in the first place, whether its charter, or some statute binding upon it, forbids or permits it to make such a contract," &c. (Ang. & Ames on Corp. 234.) "It is a first principle, not to be touched, that a contract, in order to be binding, must be lawful." (*Belding* v. *Pitkin*, 2 Caines' R. 149.) "Where a contract which is illegal remains to be executed, the court will not assist either party in an action to recover for the non-execution of it." (*Shiffner* v. *Gordon*, 12 East, 304; *White* v. *Franklin Bank*, 22 Pick. 184.)

II. The transaction being a violation of a statute declaratory of a public policy, and prohibitive upon the company, it is incapable of ratification or affirmance by either, or both, of the parties.

1. The legal virtue of an affirmance, or ratification, or adoption of a contract, is to supply an assent, or authority, where they are wanting, and the parties have power to supply them. But here is an original want of power on the contracting party. The company had no power, but was prohibited to take a subscription without the payment of ten per cent. in cash at the time of subscribing. The company had no right to set aside that condition. It is a gross misnomer to call the attempt to do so a "waiver." Parties can only waive conditions introduced or existing in favor of, or securing to them some benefit or right. This condition is in favor of the public. No act of recognition or affirmance on the part of the subscriber could supply the defect of power on the part of the company; only the legislature could take off the prohibition and restore the power. To say that an act of a subscriber, itself falling short of the legal requirement, (in not being a cash payment,) can give legal vitality to void acts on the part of the company, looks like a double absurdity. (*Hodges* v. *City of Buffalo*, 2 Denio, 112–13; *Boom* v. *Utica*, 2 Barb. S. C. 111; *Thayer* v. *Boston*, 19 Pick. 511.)

2. The invalidity is not to be supplied by ratification, because it arises from want of compliance with a statutory injunction binding upon the parties, and introduced for the benefit of the public. Only the legislature can "waive" it. Neither party can ratify, because neither can dispense with the condition precedent. (Story on Agency, §§ 240, 241; Coke on Litt. 295 [b]; *Dawes* v. *North River Insurance Company*, 7 Cow. 462.)

3. So long as the prohibition stands it bars all contracts that violate its terms, and the taint of illegality remains

and extends through all renewals or changes of the original contract. (Story's Equity Jur. § 307.)

4. The obvious intent of the statute is to utterly withhold a legal sanction from any subscription not accompanied by the cash payment of the ten per cent. The object of the statute would be defeated by allowing enough of legal vitality to inhere in the transaction to render it capable of ratification. What force would this prohibition have if companies were allowed to employ subscribers paying nothing in cash, or otherwise, at the time of subscription, and afterwards to treat the cash ten per cent as being paid by an account for services? By this course, the fund intended to be raised as a cash basis and guaranty of a solvent undertaking, is only imaginary, and there is substituted for it the services of agents employed to recommend the enterprise to the public. The provision for the cash fund could, in this way, be entirely nullified. Such a construction ought to be put upon the statute as will not suffer it to be eluded. (Bouvier's Bacon, I. 7, 10; Ang. & Ames on Cor. 229, note.)

5. The statute denies to such a transaction any legal existence whatever. It says each subscriber shall pay ten per cent "in money" at the time of subscribing, and that "no subscription shall be received or taken without such payment." It is difficult to see how a subscription which the statute says shall not exist at all, can have any standing, so that it may be ratified or affirmed. (*Smith* v. *Saratoga Mutual Insurance Co.* 3 Hill, 511, and cases cited.)

6. It must be admitted that up to the time of rendering the account and applying the credit for the ten per cent and succeeding installment, the contract was void. There was nothing for confirmation or ratification to work upon. If it should be held that there was a sufficient payment then, though not in money, still there was no signing. The term subscription has acquired a definite legal meaning, which the legislature must be presumed to have had

in view. It means the manual act of subscribing the name; and this act must concur with the payment in money, else the contract prescribed by statute is not made. See opinion of PAIGE, J. as to statute of frauds, showing that an oral agreement for sale of property void, under the statute, might become a valid contract by a subsequent acceptance of property, for the reason that the words " at the time," were stricken out of the section as reported by the revisors; otherwise the delivery must have been concurrent. (*McKnight* v. *Dunlop*, 1 Seld. 542–3.)

7. The express requirement that the ten per cent be paid " in money," is as imperative as the requisition of pre-payment itself, and excludes all other modes of payment. The provision is in pursuance of the same policy which dictated the requirement of ten per cent " in cash " upon the amount of stock mentioned in section two, for securing a money payment of ten per cent upon the whole amount subscribed. Both provisions have the same object, are couched in equivalent terms, and should receive the same construction. Without the payment of the cash amount required by section two, there could be no valid organization. Without the ten per cent in money, pursuant to section four, there is no valid subscription after organization. Would it be pretended that the projectors of the enterprise could have taken receipted bills for agents' services in lieu of the ten per cent required by section two? (Bouvier's Bacon's Abridgment [g], 235; *Lake Ontario Railroad* v. *Mason*, 16 N. Y. R. 456; Ang. & Ames, p. 229–33, §§ 10–12; *Dawes* v. *North River Insurance Company*, 7 Cow. 462; 2 Johns. R. 114; 2 Cranch, 127; *The Life and Fire Insurance Company* v. *Mechanics' Fire Insurance Company*, 7 Wend. R. 31.)

8. The dictum of Justice BACON in his opinion, that " payment in money *eo nomine* at the time of subscribing is not necessary," as applied to this case, has no authority to support it. Checks drawn upon cash funds, promissory

notes paid in cash at maturity, may be sufficient *quoad* the money payment. Such instruments have been decided to be "money" for many purposes, but whether they are so for the purposes of this statute, is yet to be settled. But work and labor have never yet been deemed money, or the appropriate elements for making up a cash fund and basis for a financial enterprise.

III. The suggestion in the opinion, that an act done in disregard of the express prohibition of the statute is not void, unless so declared in the statute prohibiting it, is opposed, it is believed, by all authority. Acts, contracts, and undertakings in violation of statutory prohibitions, or of public policy, are void by a úniversal rule and operation of law. It is enough that they are forbidden by statute or a clear public policy. (Broom's Legal Maxims, p. 350; Bouvier's Bacon stat. (I.), 7, 10; P. 256 id. (G.), p. 235; *Tracy* v. *Talmage*, 14 N. Y. R. 180; *Sackett's Harbor Bank* v. *Codd*, 18 id. 246: *Safford* v. *Wyckoff*, 4 Hill, 444–47.) In *Wheeler* v. *Russell* (17 Mass. R. 281), it is said, "no principle of law is better settled than that no action will lie upon a contract made in violation of a statute, or of a principle of the common law. (See also *Griswold* v. *Waddington*, 16 J. R. 486, per KENT; *Brady* v. *Mayor of New York*.)

1. For example, contracts to do any act on the Sabbath, prohibited by statute to be done on that day, are wholly void, on the ground of the prohibition merely. The prevailing doctrine throughout the United States is, that such contracts are wholly void and incapable of being made valid by a subsequent recognition, neither conferring rights nor imposing obligations upon either party. (New Am. Cyc. art. "Lord's Day.")

IV. Corporations must acquire their franchises and exercise their powers in strict pursuance of the statute or charter creating them. Having no original capacity like natural persons to make contracts, when their mode of contracting

is prescribed by the statute, it must be followed. The statutory regulation is their peculiar law of contracting, as to essence, mode and form, and unless they conform to that law, no valid contract is made. (*Head* v. *Providence Insurance Company*, 2 Cranch. 127; Ang. & Ames on Corp. 278, § 6; *Union Bank* v. *McDonough*, 5 Louisiana R. 63.) "An act which is an attempt to evade the provisions of a charter confers no right on him who attempts it." (*Beatty* v. *Marine Insurance Company*, 2 J. R. 109; *Safford* v. *Wyckoff*, 4 Hill R. 444–47.) See also *The Life and Fire Insurance Company* v. *Mechanics' Insurance Company* (7 Wend. R. 31), where it is held that where a particular form of security is prescribed, every other form, as well as the contract itself, is void.

V. The case shows that the note was given and the subscription was received with a view to evading or disregarding the statute, and all that was done was in pursuance of that illegal attempt. The company, in order to swell its apparent cash subscription, undertook a dispensing power as to the requirement of payment at the time of subscribing, and of the payment of cash at all. The company intended a violation of the law, and the agreement by the subscription wrought out that intent. The subscription was but the instrument for effecting a fraud upon the law, and is only a portion of an entire illegal agreement. The evidence objected to was not given to vary the terms of the written agreement, but to show that it was involved in an illegal design. The court will leave parties to illegal contracts as it finds them, except where it interferes to relieve one not in *pari delicto*. The defendant is not, at any rate, bound beyond actual execution; and partial execution of a mutual illegal agreement has never been held to bind the party to complete performance, much less where the only party upon whom the prohibition is laid, is the party demanding the aid of the court. (*Norris* v. *Norris*, Adm'r, 9 Dana's R. 317; In notes, 4 Hill, 428; *Nellis* v.

*Clark*, 4 Hill, 429; *White* v. *Franklin Bank*, 22 Pick. 189.)

VI. The clause in question is a statutory prohibition upon the company, and it alone is in fault. The defendant is not in *pari delicto*. He had a right to accept the stock on consideration of performing services afterwards. The statute, in the language of the cases, has marked the company as the criminal. (*Tracy* v. *Talmage*, 4 Ker. 162; *Curtis* v. *Leavitt*, 1 Smith, 9, 95; *The Sackett's Harbor Bank* v. *Codd*, 18 N. Y. R. 244; *White* v. *Franklin Bank*, 22 Pick. R. 181; *The Life and Fire Ins. Co.* v. *Mech. Ins. Co.*, 7 Wend. R. 31.)

1. The defense is the disaffirmance of the illegal, executory contract, and will be sanctioned by the court to vindicate the law. As to the part of the contract not executed, the law will not aid in the enforcement of a contract illegal in its inception. (2 Com. on Cont., cited 22 Pick. Rep. 184.)

VII. Conceding that some valid contract was got into being by the pretended ratification, then what was ratified? It must be the actual contract. If the company adopt the act of their agent, they must adopt it in all its parts, as well the stipulations favorable to the defendant, as those beneficial to the company. The ratifying act is in pursuance of the terms of the agreement alleged by the defendant, and must have force, if at all, by way of affirming the whole of that verbal contract. It can not be said that the execution of that contract, so far, is a constructive adoption of another contract which he really never made. When the company dispense with the defendant's services, he must be permitted to decline the stock. He never agreed to pay cash for stock. Nor is the company injured by the refusal of the defendant to proceed further with his contract. He gets no stock, and the company has the benefit of the defendant's services to the extent of some $200 for nothing.

1. The proof shows that the real contract was to pay

for the stock in services. The defendant so swears explicitly; and the agent, Doty, does not deny this; he only says: "I did not consider that I made any agreement," and upon cross-examination further says: "I undoubtedly said to the defendant, at the time of subscribing, that the whole amount of his subscription and more would be required in services for the company." It is not to be supposed the defendant would have taken the stock on any other consideration.

2. The company adopting the act of its agent, Doty, so far as to consider him a subscriber upon the terms verbally stipulated, and paying the defendant $410 in pursuance of that contract, can not now repudiate it as to the residue. (Story on Agency, § 250.) The contract ratified is the contract to take stock and pay for it in services. Confessedly the action can not stand on the written contract alone; the ratification is the sole reliance for giving it life. But the ratification can not take place otherwise than according to the intention of the party. A ratification is a new contract or a new element of assent added to a defective transaction in order to make a complete contract. In either case it can have effect only according to the meaning and intent of the party ratifying. The legal effect of a ratification is to disclose the intent, to supply authority, to manifest an assent. Now the act of the defendant was clearly intended for no other purpose except to pursue and execute the contract for services to be rendered for stock. His agreement was not to pay money; the fact is so found in regard to the first $50; the next two installments are also paid in services, and $270 is also exacted in further payment of services. If the first installment which is expressly required by statute to be paid in cash, was agreed to be paid by work and labor, and the two following were paid in the same manner, these facts are strong corroboration of the defendant's defense. Another $100 is paid in the same way, and while the company pay the defendant

cash, none is required of him. Can it be pretended that this transaction is a ratification of a contract to pay cash on the subscription? It is submitted that the whole evidence shows clearly that nothing was intended to be ratified except the verbal contract to render services for stock, and that the defendant signed only upon that consideration. This was the only arrangement in contemplation of either party when the bill was rendered and allowed.

VIII. The company can not ratify the act of their agent if they could not in the first place dispense with the cash payment of the ten per cent. on the subscription. If the company could not make such a contract, the subscriber could not be bound. It is the illegal act of the agent in taking the subscription in violation of law that needs to be aided, and that can not be cured. (*Hodges* v. *Buffalo*, 2 Den. 113; *Thayer* v. *Boston*, 19 Pick. 511; *Boom* v. *Utica*, 2 Barb. S. C. R. 111.)

IX. The agreement as to payment for services, the first ten per cent. being paid, would then be valid. It was the agreement acted upon, and the company cannot now claim anything but the stipulated services. (*McKnight* v. *Dunlop*, 1 Seld. R. 542–3.)

X. The company has parted with nothing, and suffers no injury by a disaffirmance of the contract. In various cases where corporations, having a general power to loan money, &c., unlawfully take a particular security, prohibited by law, they have been allowed to recover for the money loaned, on the equity of the case, and on the ground that only the security was avoided, and not the contract of loaning. But in this case the entire act was specifically prohibited, both as to the form and substance of the transaction. No equity existing in behalf of the company, the court will not be astute in providing a means or theory of recovery, by supposing a sort of floating and contingent contract illegal in the start, and awaiting future adoption and recog-

nition. (*Life and Fire Insurance Co.* v. *Mech. Ins. Co.*, 7 Wend. 34, and cases cited; *Philadelphia Loan Company* v. *Towner*, 13 Mass. R. 249.) The charter of the life and fire insurance company (above) provided that $250,000 might be invested by the company by means of loans on bond and mortgage, "and in no other way whatever," but the contract or security upon a prohibited loaning was not expressly avoided. The mere prohibition was held to make the whole contract illegal. (Laws of 1822, chap. 51, § 9.)

XI. The class of cases which hold that a corporation making contracts not authorized by statute, nor within its proper powers, may still recover for property parted with, money loaned, &c., affords no authority for sustaining this transaction. Here the contract is not merely *ultra vires*, or such as authorizes the animadversion of the legislature only. It violates an express prohibition, operating both affirmatively and negatively, and a prohibition directed against a particular act. The only public policy contravened by acts *ultra vires*, is that which dictates the restraining of corporations generally to their proper scope and the legitimate purposes of their creation. There is a clear ground of distinction upon which contracts which are a mere excess of authority may not be declared void, while those which violate express prohibitions must be, unless the courts shall assume the power of controling the legislative will.

*John H. Reynolds*, for the respondent.

I. The defendant's subscription was not originally invalid. It is provided by section 4 of the general railroad act, relating to subscriptions for stock after the corporation has been formed, that "at the time of subscribing every subscriber shall pay to the directors ten per cent. on the amount of his subscription, in money, and no subscription shall be received or taken without such payment."

1. It is not declared that a subscription shall be void which is not attended with the payment of ten per cent. in money. The directors are forbidden to receive a subscription without the payment of ten per cent. in money, but if they do receive it without exacting the payment of the money it is not declared that the contract of subscription is void.

2. The contract of subscription is not void, but may be enforced against the subscriber although the directors receive it without the actual payment of ten per cent. in cash.

3. There is no principle of policy, public or private, promoted or preserved by declaring such a subscription invalid; on the contrary, great wrong to creditors and stockholders might follow from releasing a subscriber under such circumstances from all liability.

4. The provision requiring the payment of ten per cent. was obviously intended for the benefit of the corporation and all who might become interested in its affairs, and it may be waived at the request of the subscriber without impairing his legal obligation arising out of his subscription.

5. The reception, by the directors, of a subscription without the payment of ten per cent. in money does not constitute an illegality which enters into and forms a portion of the contract of subscription. It is rather incidental and collateral and is not inherent in the contract, and does not form a part of the consideration. (Story on Contracts, § 621; *Wetherell* v. *Jones*, 3 Barnw. & Adolph, 624; *Ferguson* v. *Newman*, 5 Bing. N. C. 84; *Johnson* v. *Hudson*, 11 East, R. 180.)

6. If the directors commit a breach of duty in receiving a subscription without the payment of money, they may be punished as for a misdemeanor, and are liable in damages to the party injured by the breach of duty. So far as the subscriber is concerned, his obligation to pay arises when he subscribes, and it remains until it is discharged by

payment. (2 Rev. S. p. 696, § 39; *Town of Milfred* v. *Town of Worcester*, 7 Mass. R. 48; *Parton* v. *Harvey*, 1 Gray, 119; 2 Kent's Com. 90, 91; 2 Greenleaf Ev. § 460; *Mott* v. *U. S. Trust Company*, 19 Barb. 568; *Chester Glass Co.* v. *Deary*, 16 Mass. 94; *Palmer* v. *Lawrence*, 3 Sandf. S. C. R. 161; *The Steam Nav. Co.* v. *Weed*, 17 Barb. 378.)

7. Furthermore, the provisions of the statute in respect to the payment of the ten per cent. in money is to be regarded as directory and not prohibitory. (Story on Con. § 623; *Brooks* v. *Ryan*, 2 Story R. 542; *Johnson* v. *Hudson*, 2 East, 180; *Warren* v. *Manf. Ins. Co.*, 13 Pick. 518.)

II. The defendant is estopped from alleging the invalidity of the contract on account of his own wrong or omission of duty in not paying the ten per cent. in cash when he subscribed. His associate stockholders, as well as the creditors of the corporation, are interested to estop him; and if the statute imposed upon either the directors or the subscriber anything in the nature of a public duty in requiring the payment of the ten per cent., the defendant cannot set up his own wrong to get rid of his obligation. (*The Steam Navigation Co.* v. *Weed*, 17 Barb. 378; *Henry* v. *Vermillion R.*, 17 Ohio, 187; *Wright* v. *Selby R. R. Co.*, 16 B. Monroe, 5; Redfield on Railways, 86, 87, 88; *The Vicksburgh, &c., R. R. Co.* v. *McKean*, 12 Louisiana Rep. 638.)

III. A contract is not void as against a statute unless founded upon an illegal consideration which enters into and forms a part of the contract, or unless it provides for the doing of something distinctly forbidden. (2 Parsons on Cont. 542.)

1. In the present case, neither of these illegal elements exist in the contract sought to be enforced. It is lawful to subscribe and pay for railroad stock. It is the duty of the directors to exact, and of the subscriber to pay ten per cent. of the amount at the time of subscribing; but if this be omitted, the contract remains unaffected, and the obligation

9

to pay still exists, as the only thing forbidden is the omission to exact payment of the ten per cent. at the moment of subscription.

2. A careful examination of adjudged cases will show that there is no reliable authority for the proposition that a subscription such as is involved in this case is void. (*Union Turnpike* v. *Jenkins*, 1 Caines' R. 381; Same case, 1 Caines' Cases in Error, 86, 96; *Goshen Turnpike* v. *Hurtin*, 9 Johns. 217; *Highland Turnp. Co.* v. *McKean*, 11 Johns. 98; *Rensselaer and W. Plankroad Company* v. *Barton*, 16 New York R. 457, per SELDEN, J.)

IV. But it is not material whether the subscription without the actual payment of ten per cent. in cash, was originally binding or not; it was certainly binding upon him from the time it was paid, and that was in February, 1854. The transaction by which the company had credit for $210, on his account, which included ten per cent. on his subscription, and the first call of ten per cent. was in legal effect, the same as if he had paid the amount of his ten per cent in gold coin. (See BACON, J. pages 20, 21 to 24; *Black River & Utica. R. R. Co.* v. *Clark*, 25 N. Y. R. 208.)

The judgment should be affirmed.

DAVIES, J.   The subscription of this defendant was made under similar circumstances to that of Clarke, in the case of *Black River and Utica Railroad Company* v. *Clarke*, (25 N. Y. 208).   We then said that the intent of the section of the general railroad act, requiring the payment of ten per cent. in cash on the amount of the subscription, to be made in cash at the time of subscribing, doubtless was that no subscription should be valid until ten per cent. was paid thereon, and not that it should be invalid if a short interval should occur between the actual subscription and the payment of the money.   The subscription and the payment of the ten per cent. must both concur to make a valid subscription.   The subscription one day, with pay-

ment the next, would satisfy the statute; and so would actual payment at any period after subscription, with intent to effectuate and complete the subscription. The writing of the name in the subscription book should be deemed but part of the transaction, and provisional or conditional till the ten per cent. is paid. But after the payment, and as was said in that case, certainly after the payment of forty per cent. on the subscription, the statute requirement on this point must be deemed fully complied with by the defendant. There is nothing to distinguish the case now under consideration from that just referred to. It is apparent that the defendant commenced acting for the company as early as April, 1853, and his subscription was not made until July 2d of that year. It is fairly inferrible, from the amount of his account, that the company, at the date of his subscription, was indebted to him in an amount greater than the cash payment of $50, required on his subscription. It would have been an idle ceremony for the company to have handed him the amount due, and for him to have paid it back to the company on his subscription. It is, however, sufficient, under the authority of the case just cited, that ten per cent., or first amount to be paid, has been subsequently paid, to render the subscription valid and binding upon the defendants. On the 25th of February, 1854, he in fact not only paid this ten per cent., but the first installment called for of ten per cent. payable on the first day of that month. He had, therefore, on that day paid twenty per cent. on the amount of his subscription, and he can not now be permitted to allege that it was invalid because he did not, at the time of subscribing, pay the ten per cent. in cash. The charging himself with, and the allowance by the company in the settlement with the defendant, of both of these installments, was a voluntary payment of them by this defendant to the company, quite as much so as if the company had handed to him in cash the whole amount of his account, $410, and he had imme-

diately handed back the sum mentioned therein, amounting to the sum of $200. The allowance by him to the company of these sums, and the payment of the balance, was a payment of them by the defendant to the company.

The judgment must be affirmed, with costs.

MULLIN, J. I am not prepared to hold that a subscription for the stock of a railroad company organized under the general law is valid, if the ten per cent. required to be paid at the time of subscribing, is not paid. It seems to have been the opinion of the chancellor in *Jenkins* v. *Union Turnpike Company* (1 Caines' Case in Error, 86), that a subscription for stock without the payment of the five dollars required to be paid on each share at the time of subscribing, was void when the subscription was made to the stock before the organization of the corporation, but if made after, it might be valid. The statute under which the subscription in question is made, not only requires ten per cent. to be paid, but it forbids the subscription to be received without such payment. It seems to me that a subscription taken in violation of this prohibition is not binding.

But this court has held that the subscription may precede the payment of the ten per cent., and that when the ten per cent. is paid, the subscription is valid from that time. (*Black River and Utica Railroad Company* v. *Clarke*, 25 N. Y. 208.)

The only remaining question is, whether the ten per cent. has been paid?

The payment was in services performed under a contract with the company. No price was agreed on for the services before they were rendered. The price must have been ascertained before there could be an application of them on the stock. When the account was rendered and allowed, the defendant was owing the company that portion of the stock which had been called for by the directors, and the

company owed him for services.  The payment by each to the other was effected by the company crediting the services on the stock.  Was it necessary for any purpose, that the ceremony of paying money by the company to the defendant, and by the defendant of the same money back again, should be gone through with?  It seems to me not.

Concede the agreement to take pay for the ten per cent. in services as illegal and void, yet the services were actually rendered.  The company could have resisted payment by setting up the illegal agreement.  It was optional with the defendant whether he would pay anything on the stock; but he did pay by allowing a portion due him for services to be credited on the stock.

I think this was a ratification of the subscription, and a payment of the ten per cent.

The judgment should therefore be affirmed.

All the other judges being for affirmance, except SELDEN, J., who was inclined to reverse, judgment affirmed.