The order appealed from must, therefore, be reversed, with ten dollars costs and disbursements, and the motion for judgment denied, with ten dollars costs.

INGRAHAM, P. J., CLARKE, DOWLING and HOTCHKISS, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

---

UNION TRUST COMPANY OF NEW JERSEY, Respondent, *v.* EUGENE VAN SCHAICK, Appellant.

First Department, May 23, 1913.

Pleading — complaint — underwriting agreement — guaranty of payment of loan to syndicate manager — complaint stating cause of action.

Appeal from a judgment overruling a demurrer to a complaint upon the ground that it failed to state a cause of action and that the plaintiff had no capacity to sue. The complaint set out an agreement whereby the defendant subscribed for a certain number of shares of stock for which he agreed to pay one-half of the par value, the remaining portion of the stock being subscribed for by others at the same rate. The subscribers were "underwriters" and the contract provided that they desired to deal in the stock through a "syndicate manager," the other party to

the agreement. The stock was transferred to the syndicate manager and a percentage of the subscription price was to be paid upon the maturity of a loan to be made to said manager who was empowered to negotiate the same on his personal note secured by a pledge of the stock, the subscribers guaranteeing repayment of the loan. The power to enforce the agreement was given solely to the syndicate manager who had sole right to enforce payment of the obligations assumed by the underwriters. It was further alleged that subsequently another contract was made between the plaintiff and the syndicate manager reciting the prior contract and providing that the plaintiff should lend to the manager certain moneys on his promissory note, taking a deposit of the stock as security and an assignment of the underwriting agreement, which was done; that the defendant agreed to pay a certain percentage of the loan but failed to do so upon demand.

*Held*, that the two contracts construed together constituted a guaranty of payment by the defendant to the plaintiff; .

That the defendant was liable independently of the guaranty although he did not pay a percentage upon the stock at the time of his subscription;

That the plaintiff was the real party in interest and that a demurrer to the complaint should be overruled.

APPEAL by the defendant, Eugene Van Schaick, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of January, 1913, upon the decision of the court, rendered after a trial at the New York Special Term, overruling the defendant's demurrer to the complaint.

*Wilson B. Brice,* for the appellant.

*Stephen P. Anderton [S. Stanwood Menken* with him on the brief], for the respondent.

Judgment affirmed, with costs, with leave to defendant to withdraw demurrer and to answer on payment of costs, on the opinion of HENDRICK, J.

Present — INGRAHAM, P. J., McLAUGHLIN, LAUGHLIN, DOWLING and HOTCHKISS, JJ.

The following is the opinion of Mr. Justice HENDRICK:

HENDRICK, J.:

Defendant demurs on the grounds that the complaint does not allege a cause of action and that plaintiff has no capacity to sue. Attached to the complaint as a part thereof is an agreement dated October 23, 1909, by the terms of which defendant

subscribed for 25 of 1,200 shares of the capital stock of an agency company of the par value of $2,500, for which he agreed to pay $1,250. Other subscribers took the remainder of said 1,200 shares, all of which were fifty per cent paid up. All these subscribers were parties to said contract under the name of "underwriters." The other party to the contract was one Vincent R. Schenck, called the "syndicate manager." The contract recited that the underwriters desired "to purchase 1,200 shares of the full paid and non-assessable capital stock of the North Eastern Agency Company of New York, the par value of each share being $100, at $50 per share, and otherwise to deal in relation thereto through and by the 'syndicate manager' as their representative and as hereinafter provided." It was then agreed that all of the stock so purchased, except the qualification shares of the directors, should be transferred to the "syndicate manager" to be held pursuant to the agreement; that the subscribers should severally agree to purchase the number of shares of the agency company set opposite their names at $50 per share; that they "hereby agree to pay the several amounts" subscribed, "twenty-five per cent upon call and the balance upon the maturity of the loan to be made to the 'syndicate manager;'" that one-half of the shares may be sold by the syndicate manager at par; that the syndicate manager may negotiate a loan for $45,000, payable within two years, on his note, secured by a pledge of the stock, in behalf of the subscribers severally in proportion to their subscriptions, and by delivery of the agreement "as evidencing the subscribers' several guarantees of repayment of loans;" that the underwriters may withdraw their unsold shares on payment of the balance of their subscription; that Vincent R. Schenck is constituted syndicate manager, who "shall have all the power and authority of the underwriters;" that the agreement should become binding when all the stock should be subscribed; that it should end on December 31, 1911; that the syndicate manager may become a subscriber; that "the right and power to enforce this agreement when the same has become binding is hereby vested exclusively in the syndicate manager, who alone shall have the right to enforce payment of the obligations assumed by the

parties hereto;" that if any subscriber shall fail to complete his payments when called upon by the syndicate manager it shall be optional with the manager to proceed to collect and deprive the party in default of any right of participation in the benefits of the agreement; that the $45,000 raised by loan and the $15,000 paid by the subscribers should be applied by the syndicate manager to payment of interest, expenses, working capital, and the remaining $50,000 to the "North Eastern Agency Co. in payment for its treasury stock;" and that the syndicate manager should be liable only to the underwriters. The complaint alleges that the stock was all subscribed for; that said agreement became binding and effective, and that on January 28, 1910, a contract was made between plaintiff and the syndicate manager, reciting the agreement of October, 1909, and containing the following provisions: Plaintiff will lend to the syndicate manager $45,000 on his promissory note at six months at six per cent interest, with the privilege of one extension; the syndicate manager shall deposit the stock as security "and will execute or cause to be executed the necessary and proper power of attorney and assignment in connection with the said capital stock as may be required by the said Trust Company, and shall also, and hereby does, assign, transfer and set over as and for further and additional security for the payment of said note and loan unto the said Trust Company the said underwriting and undertaking and agreement * * * to the fullest extent of the undertaking and obligation on the part of the respective underwriters:" further, that the stock is fully paid and the syndicate manager has full power to pledge the stock and assign the agreement; if any subscriber wishes to pay in full the amount shall be turned over to plaintiff to be applied on the loan; the syndicate manager declares that the stock is worth $50 per share; he appoints plaintiff his true and lawful attorney to act as he might under the agreement of October, 1909, and agrees to do whatever else may be deemed necessary to assure plaintiff in its rights under the contract. The complaint alleges that the loan was made on said note, security and contract; that the loan was seventy-five per cent of the $60,000 agreed by the subscribers to be paid; that defendant agreed to pay

twenty-five per cent upon call and the balance on the maturity of said loan; that the sum unpaid, with interest, amounts to $937.50; that the loan and renewal thereof matured on January 28, 1911; that no payment has been made, although demanded; that plaintiff offers to defendant twenty-five shares of said stock on " receiving from him full payment of defendant's said guaranty, with interest thereon; " that defendant has made no payment, except twenty-five per cent. Little remains to be added. The recital of the agreements and of the allegations of fact lead to one conclusion. The two contracts must be construed as one, executed by the subscribers, the syndicate manager and the plaintiff. Without the second the first contract is incomplete. One purpose, if not its main purpose, was to enable the syndicate manager to raise a loan. Of the $1,250 which defendant agreed to pay, no part except twenty-five per cent was due or payable until " the maturity of the loan," and the syndicate manager was authorized to pledge the stock " and may deliver this agreement to the lender as evidencing the subscribers' several guarantees of repayment of loans." Reading the two contracts as one to which plaintiff was a party, there is a plain guaranty of payment. It did not run to the syndicate manager. It was not inserted in the contract between him and the subscribers. It came into being on the delivery of the money borrowed and ran direct from the subscribers to the lender. The demurrer admits the allegations that the syndicate manager was authorized to execute a loan agreement at discretion; that it was executed by him, and that the conditions on which the guarantors' liability should mature had all occurred. I am also of opinion that defendant is liable independently of the guaranty. He agreed to pay $1,250 for twenty-five shares of stock. The name of the payee is not specified, but the name of the lender is plainly implied. Whoever that might be was to furnish $45,000 of the $60,000 required to complete the purchase of the stock. Without that implication the same result follows, for it was competent for the subscribers to make an express promise of repayment, and that was done by the syndicate manager, upon whom was conferred " all the power and authority of the underwriters." He agreed with the lender to repay the sum advanced on the purchase price, and

that sum represented the sum due and unpaid on the subscriptions. Two clauses of the contract of October, 1909, may seem inconsistent with the view just expressed. They provide that power to enforce that contract is vested exclusively in the syndicate manager, with whom it shall be optional "to proceed to collect said amount due hereunder by the party or parties in default and deprive the party so in default of the right of any participation whatever in this agreement or in the benefits to be derived therefrom." When a promissory note payable to A is delivered, the sole right of enforcement is vested in him. But that fact does not divest him of the right to assign nor prevent enforcement by the assignee. Those clauses of the contract may relate to the right to enforce payment of the twenty-five per cent, for that payment only was to be made to him. It may relate to the enforcement of the subscribers' contract as among themselves. But it cannot be construed to nullify the assignment of the contract, for such construction would defeat almost the entire purpose of the transaction. The letters A and B standing at the head of the two exhibits annexed to the complaint might have been dispensed with. They were clearly identified by the allegations of the complaint. The letters, therefore, were immaterial, and their transposition could not be misleading. To condemn a pleading for such a harmless variance would violate the spirit of the Code. Nor is the point well taken that defendant did not subscribe for the stock because he did not pay ten per cent at the time of the subscription. Questions between the corporation and its stockholders are not at issue. And, besides, those 1,200 shares were "treasury stock," which implies that they had already been regularly issued and found their way into ownership by the corporation as one of its own stockholders. Finally defendant argues that the contracts are not a part of the complaint, and, therefore, there is no allegation of a cause of action. The following authorities seem to be opposed to that contention: *Jones* v. *Gould, No. 2* (123 App. Div. 236); *Spence* v. *Woods* (134 id. 182); *National Citizens' Bank* v. *Toplitz* (178 N. Y. 464). I conclude that plaintiff is the real party in interest and that the demurrer should be overruled, with leave to defendant to withdraw the demurrer and plead over on the usual terms.