(93 Misc. Rep. 431)

## HARRIMAN NAT. BANK v. PALMER.

(City Court of New York, Trial Term.   January, 1916.)

1. CORPORATIONS ⬥➙76—STOCK SUBSCRIPTION—VALIDITY.
    As between the corporation and one subscribing for corporate stock subsequently to the incorporation, the subscriber's failure to pay in cash 10 per cent. of the amount of his subscription, as required by the Stock Corporation Law (Consol. Laws, c. 59) § 53, rendered the contract of subscription invalid.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 197–209, 213–218;  Dec. Dig. ⬥➙76.]

2. CORPORATIONS ⬥➙76—STOCK SUBSCRIPTION—PAYMENT.
    The requirement of Stock Corporation Law, § 53, that 10 per cent. of every stock subscription shall be paid in money at the time of subscribing, is not complied with where the 10 per cent. payment is made by check or by a promissory note.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 197–209, 213–218;  Dec. Dig. ⬥➙76.]

3. CORPORATIONS ⬥➙76—STOCK SUBSCRIPTION—VALIDITY.
    Neither a promise to subscribe, nor a conditional subscription to the stock of a corporation, is valid.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 197–209, 213–218;  Dec. Dig. ⬥➙76.]

4. CORPORATIONS ⬥➙85—STOCK SUBSCRIPTION—ENFORCEMENT BY ASSIGNEE.
    A stock subscription, which was void because 10 per cent. of the amount thereof was not paid at the time of subscribing, as required by Stock Corporation Law, § 53, was not validated by an assignment thereof, so as to make it enforceable by the assignee, though the contract of subscription stated that its purpose was "to facilitate the company in its efforts to obtain a loan," and that it might be "hypothecated and pledged."
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 194;  Dec. Dig. ⬥➙85.]

Action by the Harriman National Bank against Austin N. Palmer. Motion for judgment on the pleadings.   Motion granted, with leave to file amended complaint.

Wesselman & Kraus, of New York City, for plaintiff.
Herbert H. Flagg, of New York City, for defendant.

ALLEN, J.  On February 19, 1915, the defendant, with others, entered into an agreement in writing with Kriterion Film Corporation, whereby he and they severally subscribed for, at par, an original issue of approximately $25,000 of its capital stock.   The agreement provided that the subscribers would pay for the stock "on or after" six months from its date, and that the stock should be allotted to them in the proportion that $25,000 should bear to the total amount subscribed.   The agreement further provided that, upon request of the corporation, each subscriber would, at the time of making payment, pay to it the "difference in cash between the amount of his subscription and the amount of the purchase price of his allotment" as a loan, for which it should give its note at six months.   The defendant subscribed $1,000; and the aggregate amount subscribed was $50,000,

⬥➙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

or about twice the amount of stock available for issue and distribution. The defendant was allotted stock to the extent of $500, none of which, however, was ever delivered to him. The agreement further provided:

"It is understood and agreed by and between the company and the subscribers that the purpose of this subscription agreement is to facilitate the company in its efforts to obtain a loan and that this subscription agreement may be hypothecated and pledged."

No part of the amount subscribed was paid at the time of the execution of the agreement; nor has any part thereof been paid subsequently by the defendant. On February 25, 1915, the corporation borrowed from the plaintiff the sum of $50,000, for which it gave its promissory notes; and, "in consideration" of the making of such loan and as collateral security for the payment of the same, the corporation assigned to the plaintiff—

"all the right, title and interest of the said Kriterion Film Corporation in and to said subscription agreement, together with said subscription agreement, and all its rights thereunder."

The corporation defaulted in the payment of its notes to the plaintiff. Thereupon the plaintiff notified the defendant that it stood ready to deliver to him his said allotment of stock and the corporation's note for $500 in accordance with the terms of the subscription agreement and demanded of him the sum of $1,000 in payment of his said subscription. He refused to pay, and thereupon, the plaintiff commenced this action to recover the sum of $1,000.

[1] The defendant demurs to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action, and moves for judgment in his favor upon the pleadings. The defendant urges, in support of his demurrer, that the complaint is fatally defective for the reason that the plaintiff fails to allege therein that, at the time of subscribing to the stock, the defendant paid in cash 10 per cent. of the amount of his subscription, as required by section 53 of the Stock Corporation Law, which provides:

"At the time of subscribing, every subscriber, whose subscription is payable in money, shall pay to the directors ten per centum upon the amount subscribed by him in cash, and no such subscription shall be received or taken without such payment."

This statute relates only to subscriptions made subsequently to incorporation (Lake Ontario, Auburn & N. Y. R. Co. v. Mason, 16 N. Y. 457; Phœnix Warehousing Co. v. Badger, 67 N. Y. 294; United Growers Co. v. Eisner, 22 App. Div. 1, 47 N. Y. Supp. 906), which is the case here; and, as between the corporation and the subscriber, a failure to comply with it undoubtedly renders the contract of subscription invalid. New York & Oswego M. R. R. Co. v. Van Horn, 57 N. Y. 473; Hapgoods v. Lusch, 123 App. Div. 23, 107 N. Y. Supp. 331; Van Schaick v. Mackin, 129 App. Div. 335, 113 N. Y. Supp. 408. Compliance with this statute is a condition precedent to the validity of the subscription. Buffalo & Jamestown R. R. Co. v. Clark, 22 Hun, 359, affirmed 87 N. Y. 632.

[2, 3] The object of subscribing to corporate stock and the purposes sought to be accomplished by this statute are to provide the corporation with the capital necessary to carry out the legitimate purposes of incorporation. U. S. Vinegar Co. v. Foehrenbach, 148 N. Y. 58, 42 N. E. 403. Consequently, payment of the required 10 per cent. by check does not satisfy the requirement of the statute (Durant v. Abendroth, 69 N. Y. 148, 25 Am. Rep. 158); nor is payment by promissory note a compliance with it. Hapgoods v. Lusch, 123 App. Div. 23, 107 N. Y. Supp. 331. The policy of the law is that subscriptions to corporate stock shall be bona fide and that the interests of corporations and of those who, in good faith, contribute to their capital be conserved. It follows, therefore, that neither a promise to subscribe (General Electric Co. v. Wightman, 3 App. Div. 118, 39 N. Y. Supp. 420), nor a conditional subscription (Ft. Edward & Ft. Miller P. R. Co. v. Payne, 15 N. Y. 583) is valid.

[4] While conceding that this claim, if asserted by the Kriterion Film Corporation, could not be enforced, the plaintiff contends that, since the contract of subscription was assigned as collateral security for a loan made upon the faith thereof, the failure to comply with the statutory requirement did not invalidate it, and that, notwithstanding such failure, it may be enforced by the plaintiff. I am unable to see the force of this contention. If the contract is void for failure to comply with the statute, I do not understand how it can be validated by assignment. The plaintiff was not a party to the contract; and it did not contain any provision which, expressly or by implication conferred any right upon the plaintiff. Consequently the plaintiff does not enjoy any rights respecting the contract except such, if any, as it acquired by virtue of the assignment. The corporation could not, of course, give, and did not attempt to give, any greater rights than it itself had. As between it and the defendant the contract never had any legal existence; and to hold that the breath of life was breathed into it by its mere transfer to the plaintiff, who took it with full knowledge of its defect clearly appearing upon its face, would not only license an easy subterfuge for evading the statute, but would constitute judicial legislation under the guise of interpretation, which is thoroughly repugnant to the theory and principles of our governmental system, and for which there can never be any justification. This statute is expressed in clear and unmistakable terms. It is mandatory in form. Its purposes are salutary. It relates to an important branch of the public policy of the state. I think, therefore, that it is the duty of the courts to sustain it, rather than to seek, by a strained construction, such as that here urged, a reason for destroying it. I believe that the plaintiff's contention is based upon a misconception of the effect of the decisions upon which it relies in making it.

In Knickerbocker Trust Co. v. Hard, 67 App. Div. 463, 73 N. Y. Supp. 979, it was alleged, as stated by the court, that the loan had been made "at the request of the individuals who are defendants in this action," that the agreement pursuant to which it was made was executed "between the telephone company, the plaintiff and the individual defendants," who subscribed to the telephone company stock and of

whom Hard was one, and that payment of the subscription "was to be made to and become enforceable by the plaintiff," the trust company, which made the loan. A direct contractual relation was consequently established between the subscribers and the party making the loan. The court sustained the claim of the trust company, upon the ground that the subscribers had made "independent promises" to it, and that it had advanced the money upon their request. Another important distinction between this case and that case is that the stock involved in that case was "treasury stock," i. e., stock which had been previously issued, and therefore presumptively paid for (Matter of Seneca Oil Co., 153 App. Div. 594, 138 N. Y. Supp. 78), and thereafter returned to the treasury of the corporation and to which, in my opinion, the statute does not apply; while, as appears from the record before me, the stock for which the defendant subscribed was an original issue.

In May v. Charlouis, 128 App. Div. 127, 112 N. Y. Supp. 554, affirmed 195 N. Y. 607, 89 N. E. 1105, in which I have had recourse to the original record on appeal, it was alleged that the loan was made "at the request of" the defendants and in reliance "upon the security and faith" of the subscription agreements; and, as stated in the opinion of the Appellate Division, it was "in view" of those allegations that the interlocutory judgment overruling the demurrer was affirmed. The subscription agreements, of which there were two, one executed before incorporation and the other afterward, confirming the former, did not contain any request for the loan, which, as stated in an agreement therefor between the trust company, which made it, and the corporation, was made at the request of the corporation; but the allegation that it was made at the request of the subscribers, aside from the allegation that it was made in reliance upon the security and faith of the subscription agreements, was sufficient to sustain the decision. It further appears that in that case the stock had been delivered to and accepted by the defendants. The subscription agreement thus ceased to be executory, and that was the ground of the court's decision at Special Term.

In Union Trust Co. v. Van Schaick, 156 App. Div. 769, 141 N. Y. Supp. 945, according to the opinion, the contract recited that the subscribers desired to deal "through and by a syndicate manager," thereby appointed, "as their representative, and that:

"The syndicate manager might negotiate a loan of $45,000, payable within two years, on his note, secured by a pledge of the stock, in behalf of the subscribers severally, in proportion to their subscriptions and by delivery of the agreement as evidencing the subscribers' several guaranties of repayment of loans."

Thus the loan was actually obtained and guaranteed by the subscribers. It also appeared that the stock was "treasury stock" and was "fully paid," and that 25 per cent. of the amount subscribed, though not paid at the time of subscribing, was subsequently paid, which constituted a ratification of the subscription and a substantial compliance with the statute. Buffalo & Jamestown R. R. Co. v. Gifford, 87 N. Y. 294.

Consequently those cases present situations materially different from that presented in this case, and the conclusions there reached are not therefore controlling upon this case. Here the defendant did not require a loan of anybody, and did not agree to repay it to anybody. The clause of the subscription agreement relating to the subject of a loan recites that it is "between the company and the subscribers," and that the purpose of the agreement is to facilitate "the company," not the subscribers, in an effort to obtain a loan. The provision to the effect that the agreement might be pledged does not, in my opinion, obligate the subscribers to pay to the pledgee thereof anything which they are not thereby obligated to pay to the corporation with which, and with which only, they contracted.

My conclusion is that the contract of subscription never having had any binding force, as between the corporation and the defendant, because of the failure to comply with the statute requiring payment of 10 per cent. of the amount of the subscription, the plaintiff acquired nothing merely by virtue of the assignment and pledge of it as collateral security for the payment of the loan; that the statement in the contract of subscription that its purpose was "to facilitate the company in its efforts to obtain a loan," and that it might be "hypothecated and pledged," did not establish, directly or indirectly, a contractual relation between the plaintiff and the defendant; and that, in the absence of either the validity of the contract, as between the corporation and the defendant, or of such a relation being established between the plaintiff and the defendant, the plaintiff cannot recover.

The motion will accordingly be granted, with $10 costs, with leave to the plaintiff, upon payment of such costs, to serve an amended complaint within six days after service of the order to be entered hereon, in default whereof the defendant may have final judgment, dismissing the complaint, with costs.

Ordered accordingly.