## PRIMOS CHEMICAL CO. v. FULTON STEEL CORPORATION.

### In re GILBERT.

(District Court, N. D. New York. July 14, 1920.)

1. **Corporations ⬤═565(1)—Corporate officer's consent to receiver's appointment does not estop him from enforcing claim for breach of employment contract.**

   Consent by a corporate officer, who had a contract for employment by the corporation, to the appointment of a receiver, does not estop him from enforcing against the receiver his claim of breach of his contract.

2. **Corporations ⬤═565(1)—Officer's contract of employment with receivers held not to waive claim for breach of contract with corporation.**

   Where receivers for corporation had been appointed by a court without jurisdiction, an officer who made a contract with the receivers for continuing his employment did not thereby waive a claim against the corporation for breach of his contract with the corporation, since he was only performing his duty to minimize damages.

3. **Corporations ⬤═76—Stock subscriptions, void for want of required payment, may be ratified.**

   A subscription for corporate stock, which is invalid, because not accompanied by a 10 per cent. payment required by Stock Corporation Law N. Y. § 53, may be ratified by a subsequent payment by the subscriber.

4. **Corporations ⬤═565(5)—Evidence held to show payment by subscriber to corporation was not on a stock subscription.**

   Evidence *held* not to show that a payment by claimant to the corporation was a payment of a stock subscription, and therefore did not ratify the subscription, and render claimant liable for the balance.

5. **Corporations ⬤═562(2)—Representations of stock subscriptions to others do not estop attack on validity.**

   Representations by a claimant that he had subscribed to stock of the corporation for which the receivers were appointed, made to others, who were thereby induced to subscribe for stock, do not estop the claimant from attacking the validity of the subscription, since the misrepresentations resulted to the benefit of the corporation.

6. **Corporations ⬤═308(6)—Sales manager of steel corporation held entitled to commissions only on steel delivered.**

   Where the contract of employment of a sales manager for the steel corporation gave him commissions on orders which the corporation should fill, and which should be paid for, he was not entitled to commission for orders procured by him, which the corporation did not fill, in the absence of fraud or bad faith by the corporation.

7. **Corporations ⬤═559(1)—Appointment in valid proceedings does not terminate contract of employment.**

   The appointment of receivers for a corporation in proceedings of a court which was without jurisdiction did not terminate the contract of employment of the sales manager of the corporation.

8. **Corporations ⬤═565(1)—Claim for commission on prospective sales allowable, if its amount can be proved.**

   The sales manager of a corporation can recover from its receivers the amount of prospective commissions under his contract, if he is able to establish such amount by proof.

9. **Corporations ⬤═565(5)—Wide latitude granted in permitting proof of prospective commissions.**

   On the hearing of a claim against receivers by the sales manager of a corporation, wide latitude should be permitted to the evidence received to determine the amount of prospective commissions; but, notwithstanding

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

such latitude, final decision is with the trier of fact whether the amount of prospective commissions had been established.

10. **Corporations** ⊛⟶565(5)—**Evidence held not to sustain claim for prospective commissions.**

Evidence in support of the claim of a sales manager against the receivers for prospective commissions, tending to show the amount of the orders claimant could have procured, is insufficient to establish the right to such commissions, where sales manager's contract gave him commissions only on orders filled by the corporation, and there was no proof that it could have filled any orders.

11. **Corporations** ⊛⟶565(2)—**Contract with sales manager held to fix minimum compensation.**

A contract of employment as sales manager of a steel corporation, which provided for payment of commissions, and guaranteeing the manager a drawing account of $8,500 a year in addition to his expense account, to be deducted from the amount of his commissions, entitles him to a minimum compensation of that amount, so that he can recover it from receivers of the corporation for the unexpired term of his contract.

In Equity. Suit by the Primos Chemical Company against the Fulton Steel Corporation for the appointment of receiver. Report of special master, allowing claim of Joseph M. Gilbert, affirmed.

See, also, 254 Fed. 454; 255 Fed. 427; 266 Fed. 945.

Bick, Godnick & Freedman, of Brooklyn, N. Y., for claimant.

Wm. A. Mackenzie and Charles E. Spencer, both of Syracuse, N. Y., for receivers.

RAY, District Judge. The special master has found the facts as follows:

"First. That on or about February 19, 1918, claimant, Joseph M. Gilbert, and Fulton Steel Corporation, entered into a written contract, Exhibit 1–A for the employment of claimant by Fulton Steel Corporation upon the terms and conditions and for the time as set forth in said Exhibit 1–A.

"Second. On or about April 1, 1918, claimant entered upon his employment with Fulton Steel Corporation pursuant to said contract, and about one month thereafter was elected and became a director and the vice president of said Fulton Steel Corporation.

"Third. That on or about April 19, 1918, Fulton Steel Corporation duly ratified and confirmed said contract, Exhibit 1–A.

"Fourth. That said claimant from April 1, 1918, continued to perform his duties and to render work, labor, and services for Fulton Steel Corporation pursuant to said contract, Exhibit 1–A, until on or about November 29, 1918.

"Fifth. On or about October 14, 1918, such proceedings were had herein in the United States District Court, Southern District of New York, that a bill in equity praying for receivership of said Fulton Steel Corporation was filed in said court, and said court appointed receivers of said Fulton Steel Corporation.

"Sixth. That on or about November 29, 1918, said receivers so appointed by said United States District Court, Southern District of New York, entered into a contract of employment, Exhibit 1–V, under and by virtue of which claimant performed work, labor, and services for Fulton Steel Corporation until on or about December 20, 1918.

"Seventh. That on or about December 17, 1918, such other proceedings were had in United States District Court, Northern District of New York, that a bill in equity was filed therein, praying for a receivership of said Fulton Steel Corporation, and thereupon said United States District Court, Northern Dis-

⊛⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

trict of New York, appointed receivers of said Fulton Steel Corporation, who ever since have been and now are acting as receivers of said Fulton Steel Corporation, and said Fulton Steel Corporation is and since December 17, 1918, in such receivership.

"Eighth. On or about December 20, 1918, said receivers of said Fulton Steel Corporation so appointed in said proceedings in the United States District Court, Northern District of New York, notified claimant that his services under his said contract of employment heretofore set forth were terminated, and therefore prevented said claimant from performing any work, labor, and services under his said contracts of employment.

"Ninth. That claimant since December 20, 1918, has been at all times ready and willing to perform all the conditions, covenants and agreements on his part to be performed under and by virtue of said contract.

"Tenth. That between the dates of April 1, 1918, and October 14, 1918, the net sales of Fulton Steel Corporation invoiced, shipped, and paid for were in the amount of $138,484.70, upon which said sum claimant earned commissions at the rate of 5 per cent. thereof, in the sum of $6,924.24, no part of which has been paid, except as hereinafter found, and which is now due and owing to claimant from Fulton Steel Corporation.

"Eleventh. Between the dates of October 14, 1918, and December 17, 1918, the net sales of Fulton Steel Corporation, invoiced, shipped, or to be shipped, and paid for, or which will hereafter be paid for, were in the further amount of $80,923.70, upon which claimant has earned commissions at the rate of 5 per cent. thereof, amounting to the sum of $4,046.18, no part of which has been paid, except as hereinafter found, and which now remains due and owing from Fulton Steel Corporation to claimant.

"Twelfth. That the total amount received by claimant from Fulton Steel Corporation on account of his said services under said contract is $7,178.04.

"Thirteenth. That since on or about December 17, 1918, claimant has been prevented from continuing and has been unable to continue his employment with Fulton Steel Corporation under and pursuant to the contract, Exhibit 1–A, without fault on the part of claimant, and that since December 17, 1918, claimant has been ready and willing at all times to perform all of the covenants and agreements and conditions of said contract on his part to be performed.

"Fourteenth. That prior to October 14, 1918, claimant signed and executed an agreement whereby claimant promised and agreed to take and pay for at the rate of $100 per share 550 shares of capital stock of said Fulton Steel Corporation; that at the time said claimant so signed and executed said agreement said Fulton Steel Corporation had been incorporated; that no payment in any sum was ever made by claimant on account of his said subscription to said shares of the capital stock of said Fulton Steel Corporation; and that claimant never subsequently ratified or confirmed said attempted subscription so made by him.

"Fifteenth. That claimant has proved and has suffered prospective damages for and on account of his being prevented from continuing his employment under said contract, Exhibit 1–A, in the further sum of $21,250.

"Sixteenth. That no part of the claim of claimant herein is in any way secured."

## And as conclusions of law the special master held:

"First. That the receivership proceedings herein in United States District Court, Southern District of New York, were and are wholly illegal, void, and of no effect, and did not operate to terminate or breach the contract, Exhibit 1–A.

"Second. That the receivership proceedings herein in United States District Court, Northern District of New York, breached the contract, Exhibit 1–A, on the part of Fulton Steel Corporation without the fault of claimant.

"Third. That said receivership proceedings in United States District Court, Northern District of New York, did not so terminate the contract, Exhibit 1–A,

as to prevent claimant from recovering his provable damages for the breach of said contract.

"Fourth. That the subscription of claimant attempted to be made by him for 550 shares of the capital of Fulton Steel Corporation was and is illegal and void.

"Fifth. That claimant, Joseph M. Gilbert, has and has proved a valid claim and damages over and above the offsets and counterclaims against Fulton Steel Corporation as follows:

| | |
|---|---|
| 5 per cent. on $138,484.70 | $ 6,924.24 |
| 6 per cent. on $ 80,923.70 | 4,046.18 |
| Damages for prospective profits for breach of contract | 21,250.00 |

| | |
|---|---|
| Total | $32,220.42 |

"Sixth. That no part of same has been paid, and is now wholly due and owing from Fulton Steel Corporation to claimant, except the sum heretofore paid by Fulton Steel Corporation on account of said services of said claimant amounting to the sum of $7,178.04.

"Seventh. Total claim and damages proved, $25,052.38, to the extent of which sum claimant, Joseph M. Gilbert, is entitled to share in the assets of Fulton Steel Corporation properly applicable thereto."

The special master's memorandum of opinion based thereon is as follows:

"This is a claim of claimant, Joseph M. Gilbert, for damages under a contract entered into between Fulton Steel Corporation and claimant dated February 19, 1918. The contract is in evidence as Exhibit 1–A, and so far as is necessary to be stated in this discussion of Mr. Gilbert's claim is in substance as follows:

"Mr. Gilbert was to become general sales manager of Fulton Steel Corporation, in charge of the selling forces thereof. His compensation for his services was based upon the total annual sales made by the company, invoiced, shipped and paid for. Upon such sales he was to have a commission of 5 per cent. on the first $500,000 in any one year, and further commissions in varying amounts upon sales in excess of such sum. The contract further provided that the Fulton Steel Corporation guaranteed claimant $8,500 per year, to be paid in equal monthly installments during the term of the agreement. This so-called drawing account was not for traveling expenses and selling expenses, which were to be paid to Mr. Gilbert in addition to said drawing account. The drawing account and traveling expenses were to be deducted at the end of the year from the commissions earned. The agreement was to take effect not later than May 1, 1918, and was to continue until at least December 30, 1920, after which it might be discontinued by either party giving the other a 6 months' notice in writing of such intention. The agreement further contemplated that Mr. Gilbert should become a member of the executive committee, and gave him an option of subscribing to a certain amount of the stock of the corporation.

"This agreement was accepted by Mr. Gilbert under date of November 19th, and he actually took up the duties of his position on or about the 1st of April, 1918. The contract was ratified and approved by the corporation on the 19th day of April, 1918 (Exhibit 1–B). On or about the 1st day of April, 1918, Mr. Gilbert entered upon the duties of his office, and so continued until the receivership proceedings herein were begun.

"October 14, 1918, the United States District Court for the Southern District of New York appointed receivers of the corporation in proceedings begun in that district. Later a new proceeding and a new bill in equity was filed in the Northern district of New York on the 17th day of December, 1918, and a new set of receivers were appointed by the court in said district. About November 29, 1918, Mr. Gilbert entered into an arrangement with the receivers whereby he was to receive compensation at the rate of $708.33 a month. Mr. Gilbert's claim is based upon commissions alleged to have been earned on

sales made by the company, and also upon damages for prospective profits which he would have earned, had the company been able to carry out its contract with him during the time stipulated.

"Certain defenses, together with an alleged set-off and counterclaim, which are interposed by the receivers, will be first disposed of.

[1] "(1) The receivers contend that Mr. Gilbert, as an officer of Fulton Steel Corporation, aided in bringing about the receivership and acquiesced in it, and also acquiesced in the subsequent sale of the property to Ontario Steel Company. Having done so, and so caused or aided in bringing about the condition which made it impossible for Fulton Steel Corporation to fulfill its contract with him, that he is here estopped from any claim for damages therefor. I do not agree with this contention. No cases have been cited by the receivers which sustain their position, and in the absence of precedent I am loath to believe that such a defense is good in equity. So far as appears, Mr. Gilbert acted in good faith in this regard. The desperate financial straits of Fulton Steel Corporation fully justified him and his brother officers in seeking the aid of a court of equity. They would have been remiss in their duty apparently, had they not done so. At any rate, after anxious and protracted thought, after considering every other expedient, they came apparently to the honest conclusion that this was the only available resource left to their corporation.

"If Mr. Gilbert is to be penalized for being active and diligent in conserving the assets and in furthering the best interests of the corporation of which he was a director, the result will be not an equitable, but a most inequitable, estoppel. The conscience of a court of equity will not, I believe, permit such a defense to be interposed, and I accordingly report and find that such defense is not available to the receivers herein.

[2] "(2) Nor do I think that Mr. Gilbert's contract of employment with the receivers was a waiver of any claim for damages. It was his duty to obtain employment if he could and so reduce his damages. His letter accepting the position shows that he intended to reserve all such rights to damages as he thought he had.

[3] "(3) The receivers assert that Mr. Gilbert subscribed to $55,000 worth of the stock of Fulton Steel Corporation after its incorporation, and while they admit that at the time of making such subscription he did not pay 10 per cent., or any other amount thereof, they say that subsequently he did make a payment by check of $1,000 to apply upon said stock subscription, and that therefore he ratified the same. Mr. Gilbert, on the other hand, while admitting that he so subscribed, insists that the subscription is invalid, because he did not pay the statutory 10 per cent. thereof at the time when he made such subscription. He denies ever having paid anything thereafter on account of said subscription, and insists that the special master here is limited by the order appointing him to ascertaining the claim against Fulton Steel Corporation, and cannot determine any claim which the Fulton Steel Corporation may assert against claimant, whether by way of set-off or counterclaim.

"I should be inclined to hold that, to the extent at least of a set-off, the special master has a right to make a finding, as otherwise the court would get no enlightenment as to the actual amount, if any, due to claimant, and this apparently is the object of the reference. It is not necessary, however, for me to decide this proposition here, as I have found that the stock subscription was not valid when made, and was not subsequently ratified by claimant. The Stock Corporation Law of the state of New York (Consol. Laws, c. 59, § 53) provides in regard to subscriptions to stock as follows: 'At the time of subscribing, every subscriber, whose subscription is payable in money, shall pay to the directors ten per centum upon the amount subscribed by him in cash, and no such subscription shall be received or taken without such payment.' This provision has been many times construed by the courts of New York state. They hold that this provision of the section is mandatory, and is not met by a payment by the subscriber of 10 per cent. by means of a check or a note. Harriman National Bank v. Palmer, 93 Misc. 431,

158 N. Y. Supp. 111; Hapgoods v. Lusch, 123 App. Div. 23, 107 N. Y. Supp. 331.

[4] "On the other hand, the courts have declared that a subscription, although invalid in this regard, may be ratified by a subsequent payment of the subscriber. B. & J. R. R. Co. v. Gifford, 87 N. Y. 294; Harris v. Wells, 57 Misc. Rep. 172, 108 N. Y. Supp. 1078. Therefore, if Mr. Gilbert subsequently paid $1,000 on his stock, he ratified his subscription and waived the initial illegality. But I think that the alleged payment of $1,000 is not proved. Mr. Gilbert sets forth in detail the transaction in regard to the $1,000 check which the receivers insist was given as a part payment upon his stock. He says that at the time when money was due him on account of his salary and commission that he was in need of $1,000, and applied to the vice president, George Coffing Warner, for payment; that Mr. Warner was unwilling to pay him anything, owing to the fact that he was preparing a statement of the assets of the concern for the purpose of getting further credit or obtaining loans, and did not wish to deplete its apparent bank account; that finally it was agreed, in order to accommodate Mr. Gilbert, so that he could get the $1,000 in cash, that the steel corporation should give Mr. Gilbert a check for $1,000, and that Mr. Gilbert should in return give his check to the corporation for a like amount; that this was done, and the check was finally paid.

"Mr. Gilbert made a most favorable impression on me while on the stand. He appeared to be absolutely honest, straightforward, and frank; nothing occurred or was brought out on the trial which would justify me in holding that he did deliberately fabricate out of whole cloth this circumstantial history of the giving of the $1,000 check. I am strengthened in this conclusion by the significant fact that the receivers made no effort to impeach this testimony by calling Mr. George Coffing Warner or Miss Dorn, the only other persons who knew of the transaction at the time it occurred. Nor did the receivers lack opportunity so to do. Both Mr. Warner and Miss Dorn were available, as is proved by their being produced as witnesses in regard to other claims herein. The inference is strong that the receivers were aware that, if called, these people would have corroborated Mr. Gilbert. It is true that Mr. Beaver testified to an alleged admission by Mr. Gilbert, made subsequent to the event. Mr. Gilbert denies having made any such admission, and, while I do not doubt the truthfulness of Mr. Beaver, I am constrained to believe that he misunderstood what Mr. Gilbert said to him.

[5] "One other phase of the stock subscription incident requires a brief comment. Two of the directors, Thomas H. Dinsmore and James T. McCleary, have testified to conversations with Mr. Gilbert, in which Mr. Gilbert said to them that he had subscribed for $55,000 worth of stock of the corporation, and Mr. McCleary says that he was induced to take stock in the corporation because of the fact that Gilbert had so subscribed. But this at worst worked no estoppel in favor of Fulton Steel Corporation against Mr. Gilbert. It is elementary that to constitute an equitable estoppel the acts or words of the parties sought to be estopped must have induced the aggrieved party to do something or to refrain from doing something to its detriment.

"Here, assuming that Mr. Gilbert was actually deceiving Mr. McCleary, the result was not a disadvantage, but a positive benefit, to the Fulton Steel Corporation, because it operated to bring to it an additional subscription to its stock. But I prefer to believe, and do believe, that Mr. Gilbert was wholly innocent of any deception in all this. At the time he made these statements he doubtless thought that his subscription was valid and enforceable. Later he consulted counsel, and, after then learning that he was not legally obligated, he elected to stand upon his legal rights. In this, too, I think he was morally justified, in view of the representations made to him by Warner as to the conditional character of his stock subscription at the time he made it.

[6] "With these contentions of the receiver disposed of, we come down to a consideration of the damages sustained and proved by claimant. Both parties agree that Mr. Gilbert is entitled to recover commissions earned prior to the receivership in the Southern district. They differ, however, in the computation. Mr. Gilbert claims commissions earned during such period upon the

amount of contracts for steel obtained, while the receivers insist that he is entitled only to commissions on sales actually filled and paid for. In this I think the receivers are right. The contract explicitly so provides. There is no evidence that Fulton Steel Corporation, or its officers, willfully, maliciously, or in bad faith refused to accept and fill any of the orders effected through Mr. Gilbert and his corps of salesmen.

"Mr. Gilbert complains that the company was mismanaged, and if it had been efficiently conducted it would have been able to care for all orders; but Mr. Gilbert is bound by his contract. He did not bargain for commissions on all orders which the company ought to fill, but only for commissions on orders which it should fill, and which should be paid for. By his contract he was to become and did become one of the officers who were to shape its policies. He knew its condition, and could form his own estimate of its probable ability to turn out steel. He took his chances in this regard, and contracted with that in mind. In the absence of fraud or bad faith on the part of the company, he can recover only that for which he bargained.

"The evidence shows that the gross sales of the company prior to the appointment of the receivers in the Southern district of New York, October 14, 1918, amounted $141,645.71. Out of these gross sales should be deducted the amount of goods returned and not paid for, amounting to $3,161.01, leaving net sales between April 1, 1918, and October 14, 1918, of $138,484.70. Mr. Gilbert is entitled to commissions of 5 per cent. upon this sum, and these amount to $6,924.24.

"From the time of the receivership in the Southern district of New York to the date of the sale of the assets to the Ontario Steel Company, Fulton Steel Corporation filled orders which were either paid for or are conceded to be good, and that they will be paid for, amounting in gross to the further sum of $101,752.24. From this sum should be deducted the amount of goods returned and not paid for, and various expenses connected therewith, amounting to $20,828.54, leaving net sales from October 14, 1918, to January 22, 1919, of $80,923.70. Of the amounts received for sales during this period, $19,861.51 was for orders taken during the receivership in the Southern district.

[7] "The receivers contend that Mr. Gilbert should not have commissions upon this later sum, upon the ground that the receivership terminated the contract by operation of law, and that Mr. Gilbert can recover no damages accruing after that time. But, whatever was the effect of the receivership in the Northern district of New York, there can be no doubt that the receivership proceedings in the Southern district of New York were wholly invalid. This court has so held, and by entertaining the new application for a receivership it necessarily ruled that the District Court of the Southern District of New York obtained no jurisdiction in the prior proceeding. I think, therefore, that it is clear that Mr. Gilbert is entitled to 5 per cent. commissions on the further sum of $80,923.70, which amounts to $4,046.18.

[8] "We are now brought to a consideration of Mr. Gilbert's claim for prospective profits. I think he is entitled to maintain his claim in this regard. The case of Pennsylvania Steel Co. v. New York City Railway Co., 198 Fed. 735, 117 C. C. A. 503, is one in the Second Circuit and would seem to be a compelling precedent in this district. That case holds that a voluntary receivership does not operate so to dissolve the corporation as to terminate the contract, and declares that under such circumstances an existing contract which still has a period to run is breached by the appointment of receivers, and the party contracting with such corporation has a claim for his prospective profits and damages. But the right to maintain such an action is one thing. Adequate proof of damage justifying an award is another. The court in the above-cited case classifies claims as follows: '(1) Claims of which the worth or amount can be determined by recognized methods of computation at a time consistent with the expeditious settlement of the estates. (2) Claims which are so uncertain that their worth cannot be so ascertained. The second class of claims cannot be proved. They may be highly meritorious, but they cannot share in the estate, because their amounts cannot be ascertained.'

[9] "This case, together with many others cited therein, and to be found

elsewhere in the reports, all agree that in proving prospective damages latitude must necessarily be given in the reception of evidence. Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676. Proof of past earnings under the broken contract is admissible, and a certain amount of speculation may be indulged in, owing to the fact that often this is the only evidence, and therefore the best evidence obtainable.

"Applying this principle, the special master permitted claimant on the trial to enter into elaborate calculations, based on all sorts of hypothetical conditions, past and present, as to the amount of orders he could have obtained during the balance of the stipulated time of his contract. Counsel for the receivers protested vigorously that much of this evidence was merely 'dreaming'; but I think, under the above rule, it was properly admitted. However, the same cases which declare such evidence to be admissible all agree that its weight and sufficiency is for the trier of the fact, and further that such evidence must not be wholly speculative and illusive, to support a verdict for anything more than nominal damages. It is useless to cite cases in which this class of evidence has been held sufficient or not sufficient. Each stands by itself, like a negligence action in this regard.

[10] "In the case at bar I cannot discover that necessary solid substratum of fact or probability which will permit me to find that the claimant would have been able to earn any substantial sum as commissions under his contract. Even if his evidence be enough to justify finding that he could have obtained a certain amount of orders, yet he has wholly failed to show that Fulton Steel Corporation would have been able to fill any orders, and this he had to show to recover under the peculiar form of his contract. On the contrary, the evidence on the other case is overwhelming that, if Fulton Steel Corporation had not gone into the receivership, it could not have continued in business, and so could not have filled any orders. Bear in mind that claimant's contract is not based on orders obtained, but is limited to commissions upon actual sales filled and paid for. Having so contracted, he cannot be heard to complain because the company did not meet with that degree of success which would enable it to fill the orders obtained by claimant.

[11] "This would finally dispose of all claims for prospective profits based on commissions alone. But I do not think Mr. Gilbert's remuneration under the contract is wholly contingent upon commissions. His contract of employment (Exhibit 1–A) starts off by saying that his compensation shall be based upon commissions on total sales made by the company invoiced, shipped and paid for, but it goes on to provide that the company guarantees Mr. Gilbert a drawing account of $8,500 per year, to be paid in equal monthly installments, and that this sum is not for traveling or selling expenses, for which Mr. Gilbert is to be reimbursed in addition to said amount of $8,500 per annum. I can read this contract in no other way than that it provides for a minimum compensation in any event for $8,500 per annum, whether the commissions on sales amount to such sum or not. This is a very different provision than the ordinary one for a drawing account, out of which a person is to reimburse himself for his expenses.

"I do not believe that, if Mr. Gilbert had failed in any one year to earn commissions in the amount of $8,500 a year, the company could have recovered from him any amount of such $8,500 which had been paid him. If this is so, then the real meaning and intent of the contract is that Mr. Gilbert was to receive a salary of $8,500 a year, not based upon any commissions, and not contingent upon any commissions. I have found that this contract must be so construed. This being so, we have a measure of damages for prospective profits due to the breach of the contract by the receivership, which is fixed and determinable.

"The agreement for the payment of $8,500 a year during the term of the contract is not contingent on the success or failure of the corporation, or upon anything else. It is absolute. Therefore I may find, and I do find, that if the contract had not been breached claimant would have been entitled to receive from Fulton Steel Corporation an amount equal to the sum of $8,500 per annum during the time when the contract would have run. The earliest period at

which the contract could have terminated was July 1, 1921. The unexpired term of his contract is a few days over 2½ years. I therefore find that he has and has proved that his profits under the unexpired term of the contract would have amounted to $21,250, and that this sum is the measure of his damages for such time. Mr. Gilbert is accordingly entitled to the following amounts:

| | |
|---|---|
| 5 per cent. on $138,484.70 | $ 6,924.24 |
| 5 per cent. on $ 80,923.70 | 4,046.18 |
| Damages for prospective profits | 21,250.00 |
| | |
| Total | $32,220.42 |
| Deduct from this sum the amount of which is the total amount received by Mr. Gilbert during his entire period of employment as stipulated | 7,178.04 |
| | |
| | $25,052.38 |

—which I have found to be the total amount of the damages to claimant in this proceeding."

I have arrived at the conclusion that the above findings of fact made by the special master should be approved and confirmed, and that his conclusions as above stated should also be confirmed, and the objections to the confirmation overruled.

There will be an order accordingly.