[No. 3,622.]

# THE PEOPLE OF THE STATE OF CALIFORNIA (BY JOHN L. LOVE, THE ATTORNEY GENERAL) *v.* THE STOCKTON AND VISALIA RAILROAD COMPANY.

CERTIFICATE OF INCORPORATION.—In making a certificate of incorporation and the affidavit attached thereto, a substantial compliance with the statute is all that is required. A literal compliance with the statute in such cases is never required.

FORMATION OF RAILROAD CORPORATION.—The statute relating to the formation of railroad corporations is substantially complied with, if the only defect in the papers necessary to constitute a corporation, is the omission of the words " in good faith " in that portion of the affidavit attached to the certificate relating to the payment of the ten per cent.

IDEM.—The Treasurer of a company about to form a railroad corporation may receive from the subscribers payment of the ten per cent required by law to be paid to him in bank checks drawn by the subscribers, and payable *in presenti*, provided they are drawn against a sufficient fund and the banks will pay the checks on presentation, and the same are drawn in good faith and with no intention to evade the law.

IDEM.—Question discussed as to what is the commencement of the transaction of corporate business within one year from the time of filing certificate.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

This was an information filed by the Attorney General. The complaint averred that the " defendants had associated themselves together under the name of the Stockton and Visalia Railroad Company, unlawfully claiming to be a corporation, and by the name aforesaid are unlawfully acting as such pretended corporation, and have without right or authority usurped the franchise and privilege of a corporation." The complaint then stated the particulars wherein the defendant had failed to comply with the laws in relation to the formation of railroad corporations, which are the same mentioned in the opinion. Judgment of ouster was prayed for. The corporation was the only defendant.

The plaintiff had judgment in the Court below, and the defendant appealed.

The other facts are stated in the opinion.

*S. W. Sanderson,* for Appellant.

The complaint and summons is against the corporation. The complaint brings in question the corporate existence of the defendant, upon the ground of its non-performance of conditions precedent, and claims an ouster on account of such non-performance. The existence of the corporation cannot be questioned in such an action, for the action itself is a waiver on the part of the State of the performance of such conditions, or an admission that the defendant is a corporation, which it is estopped from afterwards denying. In the nature of things, a corporation cannot be a usurper of its own existence, nor an intruder into its own corporate capacity. The corporation is the effect and not the cause of the usurpation. Where the object of the action, as is the case here, is to establish the non-existence of a corporation on account of the non-performance of conditions precedent, it

should be instituted against the individuals who claim to constitute the corporation, for they alone are usurpers. In an action against the corporation the question is one of forfeiture, not of existence. (Angell & Ames on Corporations, Sec. 756; *Commercial Bank of Natchez* v. *The State of Mississippi*, 6 Smedes & Marshall, Miss. 614; *The State ex rel.* v. *Cincinnati Gas Light and Coke Co.*, 18 Ohio State, 262.) It is true, that where a corporation exercises franchises or powers not granted to it by its charter, it becomes, as to such franchises or powers, a usurper, and may be proceeded against as such; but such is not the case here. Of such cases an example is found in the case of *The People* v. *Utica Insurance Co.*, 15 John. 358. The only case in this Court, of the same character as the present case, was brought against the individuals constituting or claiming to constitute the corporation. (*People ex rel. Plumas County* v. *Chambers*, 42 Cal. 201.)

The facts show a substantial compliance, in good faith, with the conditions of the statute in relation to the payment of the ten per cent and the commencement of business. As to the latter of these propositions no question can be made. It will be contended, however, that the checks in question were not payment "in cash" and "in good faith" within the meaning of the statute. (Stats. 1861, p. 607.) This statute is to be reasonably interpreted; that is to say, it is to be read by the light afforded by the habits of business men. Whatever would be a cash payment between man and man is a cash payment within the meaning of the statute. Any act which puts the money at the command of the Treasurer of the company is a substantial compliance with the statute, and a substantial compliance is all that is required. These checks were verbally accepted or certified, and thereby the drawers became bound to the Treasurer of the company for their amount. "A certified check is an admission on the part of the banker that he holds that

amount of money for the drawer, and an undertaking to hold it for payment of the check." (*Andrews* v. *German National Bank*, S. C. Tennessee, Pacific Law Reporter, December 24th, 1872; *Schoolfield* v. *Moon*, S. C. Tennessee, Pacific Law Reporter, December 24th, 1872; *Simpson* v. *Pacific Mutual Life Insurance Co.*, 44 Cal. 139.) There can be no doubt that the acts shown in this case would have amounted to a cash payment between the drawers of these checks and the drawee as individuals acting in their own business. The Treasurer having received the checks, having had them accepted or certified by the bankers, and having receipted to the drawers for the amount which they called for, became the owner of the money which they represented in the hands of the bankers. Had the banks failed the loss would have been his, and hence the money was his. (*Simpson* v. *Pacific Mutual Life Insurance Co.*, *supra*.)

In conclusion, it is submitted that proceedings of this character rest very much in the discretion of the Courts. The same rules apply as in cases of forfeiture. "To work a forfeiture there must be something wrong, arising from willful abuse or improper neglect—something more than accidental negligence, excess of power, or mistake in the mode of exercising an acknowledged power." (Angell & Ames on Corporations, Sec. 776.) "A substantial performance of conditions is all that is required to prevent a forfeiture, whether they be conditions precedent or subsequent." (*Thompson* v. *The People*, 23 Wend. 537; *In the Matter of the Application of the Spring Valley Water Works*, 17 Cal. 132; *Spring Valley Water Works* v. *San Francisco*, 22 Cal. 434.)

*Byers & Elliott*, for Respondent.

Admitting, for the sake of argument, that the complaint styles the defendant a corporation, the object of this form of general allegation of usurpation of power is, to call forth in the answer, the recital of the act of "incorporation." It is

.to require the defendant to make proof of every act, affirmatively, to authorize the exercise of corporate powers. The name of the writ, " by what authority," indicates the intention of the people to require the defendant to show that every step has been taken to authorize the great power which the law confers on corporations—in short, it calls upon defendant to show by what authority it acts.

The statutes of California have prescribed no particular mode of pleading or proceeding in cases of this kind, and it is presumed that the proceedings shall be according to the course of common law, and the jurisdiction of the Court to determine these matters seems to arise from the fact of its general jurisdiction, rather than from any statute upon the subject. For the only section upon the subject, if applicable to this case, makes no provision for dissolving a corporation for non-user or misuser of its charter. (Practice Act, Sec. 310.)

And we apprehend that in every .case which sustains the views of appellant it will be found that the complaint expressly concedes the existence of the corporation, or that the statute has prescribed the mode of pleading. In the New York cases an information similar to the present complaint has been sustained in every instance where the question has been raised, until the revised statutes provided the *modus operandi.*

In the case of *The People* v. *The Rensselaer and Saratoga Railroad Company,* the point was raised, and the case of *The People* v. *Niagara Bank* discussed. The Court gave no opinion of the effect of the information as filed only, as the proceedings were affected by the revised statutes, which provided that an information in the nature of quo warranto may be filed against individuals in several cases, one of which is, that "where any association or number of persons shall act within this State as a corporation without being legally incorporated." (15 Wendell, 127.)

In *The People* v. *Bank of Niagara*, the Court says: "The first question respects the sufficiency of the information; upon this I shall only remark that the form adopted here is the same which was used in the celebrated case of the *City of London*, 3 Hargr. St. Tr. 545, and which was there adjudged sufficient. A like precedent is given in *Rex* v. *Amery*, 2 T. R. 515. I am perfectly satisfied, therefore, with the form of the pleadings." (*People* v. *Niagara Bank*, 6 Cow. 196.)

In the case just cited it will be observed that the information is filed against the defendant by its corporate name, and alleges usurpation of the powers of a corporation. The two cases immediately following are to the same point. (*Commonwealth* v. *Tenth Massachusetts Turnpike Corporation*, 5 Mass. 510; in which the Court cites *The People* v. *Kingston Turnpike*, 23 Wend. 193; *People* v. *Niagara Bank*, 6 Cow. 196; which last case cites 3 Hargr. St. Tr. 545; and *Rex* v. *Amery*, 2 T. R. 515.)

The affidavit to the articles of incorporation is fatally defective. The statute concerning corporations requires that there shall be attached to the articles of association an affidavit, setting forth, among other things, that ten per cent in cash has been paid in in good faith. (Hit. Gen. Laws, p. 125, Art. 827.) The affidavit attached to the articles in this case omits what, in these degenerate days of corporations, should be most scrupulously inserted, the words, "in good faith." Without these little words in the affidavit incorporators can easily satisfy their consciences by paying in the ten per cent and immediately drawing it out again.

The testimony shows that there was no pretense of paying in ten per cent in cash. It does not appear with any certainty that the checks would have been cashed, and it does not appear that any cash was ever paid prior to the organization. The checks were not indorsed good by the banks. The banks might not have had the money when called for, and if the checks had been certified it would merely amount

to a subscription of the credit of the bank to that of the drawer. The credit of banks has frequently proven anything but cash.

By the Court, CROCKETT, J.:

Waiving the question whether this proceeding was properly instituted against the defendant by its corporate name, or should have been brought against the individuals assuming to exercise corporate powers, we proceed to inquire whether, on the facts established at the trial, the defendant was duly incorporated and is entitled to exercise corporate powers.

Its authority to act as a corporation is assailed on the ground, first, that the affidavit annexed to the certificate of incorporation omits to state that ten per cent of the amount subscribed had been paid in cash "in good faith;" second, that the ten per cent was not, in fact, paid in cash, but in checks which were never presented or paid, and which were subsequently returned to the drawers; third, that the company did not, within one year after filing its certificate of incorporation, commence to transact business as a corporation.

We shall notice these points in their order. Section two of the Act of May 20th, 1861 (Stats. 1861, p. 607), provides that there shall be annexed to the articles of incorporation an affidavit "setting forth in substance that said amount of stock has been subscribed, and that ten per cent in cash thereon has been actually and in good faith paid in as aforesaid."

In this case the affidavit conforms strictly to the requirements of the statute, in stating that the ten per cent "in cash has been actually paid in," but omits the words "in good faith."

In the body of the certificate, however, it is stated that

more than ten per cent of the amount subscribed "has been actually, in good faith, paid thereon," in cash; and the certificate, together with the affidavit, are in all respects regular, except, as already stated, the latter omits the words "in good faith." But we think this was a substantial compliance with the statute, which is all that was necessary.

A literal compliance is never required in such cases. (*Mokelumne Hill C. & M. Co.* v. *Woodbury*, 14 Cal. 424; *Ex Parte Spring Valley Water Co.*, 17 id. 136; *Spring Valley Water Co.* v. *San Francisco*, 22 id. 440; *Thompson* v. *The People*, 23 Wend. 537.)

On the second point the case shows that the ten per cent was paid by bank checks drawn by the subscribers to the stock, on banks located in the City of Stockton, and were payable *in presenti*, and that before accepting the checks the Treasurer of the company inquired at the several banks whether they would be paid on presentation, and was assured by the bank officers that they would be; and on the faith of this assurance he accepted the checks as cash, and receipted for the amount represented by them as so much cash. It further appears that the checks would have been paid on presentation at any time whilst they remained in the hands of the Treasurer; but as the company had no immediate use for the money, the Treasurer deemed it unnecessary to demand payment for the time being, and shortly thereafter the drawers of the several checks paid to him in cash the amount represented by the checks, whereupon the latter were returned to the respective drawers.

It is clear from the testimony that these transactions were made in perfect good faith, and with no intention to evade the law, unless it may be in the cases of Bours and Bostwick, to be hereafter noticed. Assuming that the checks were delivered and accepted in good faith as cash, with the

understanding that they might and would be immediately presented for payment, and assuming further, as we are authorized to do from the proofs, that they were drawn against a sufficient fund, and would have been paid on presentation, and were, in fact, afterwards paid by the drawers, the question arises, whether this was a payment in *cash*, within the true intent of the first section of the Act of May 20th, 1861, providing for the incorporation of railroad companies.

In *People* v. *Chambers*, 42 Cal. 201, the whole amount to be paid was eleven thousand dollars, of which ten thousand dollars was paid by a check drawn by a person who had no funds in bank to his credit, and the check was never presented for payment, but many months afterwards was surrendered to the drawer on a settlement of accounts between him and the railroad company. We held that this was not a payment "in cash" within the purview of the statute. But we expressly reserved our opinion on the question whether "a payment of the ten per cent, in good faith, by checks payable *in presenti*, and drawn against a sufficient sum on deposit to meet them, would be a compliance with this requirement of the statute, and particularly if the checks were presented and paid within a reasonable time."

We are now called upon to decide this question, and have no doubt that under the facts disclosed by this record the payment was sufficient. It was a substantial compliance with the statute, and practically was as much a payment "in cash" as though it had been paid in coin. The money was placed completely within the power and under the control of the Treasurer, who could at any moment have converted the checks into cash by presenting them for payment. And the good faith of the transaction is established, not only by the direct testimony, but by the fact that the cash was in fact paid shortly after the checks were delivered, and as soon as the money was needed.

The statute should receive a reasonable construction, and whilst its provisions ought not to be allowed to be evaded, as was attempted to be done in *People* v. *Chambers*, nevertheless a substantial compliance with them will fulfill the intention of the Legislature.

But it is claimed for the plaintiffs that the checks given by Bours and Bostwick, two of the subscribers to the stock, were not intended to be presented or paid; and that therefore their delivery to the Treasurer was not in good faith. There is evidence tending to show that when these checks were about to be delivered, one Jackson stated to Bours and Bostwick that the checks would not be presented for payment, and Bours testifies that he would not have made and delivered his check, except for this understanding with Jackson, whom he styles the President of the railroad company. But, as the checks were delivered before the filing of the certificate of incorporation, it is not very apparent how Jackson could have been the President of a corporation not then organized.   But however this may be, the Treasurer testifies that he was not a party to and had no knowledge of such an understanding, and would not have receipted for the checks as cash, except under the belief that he was to be at liberty to present them immediately for payment.   It does not appear that Jackson had any authority to make such an agreement with Bours and Bostwick, and as the checks on their face were payable *in presenti*, and the Treasurer accepted and receipted for them as cash, without any understanding on his part that they were not to be presented for payment, it is clear that the transaction was not tainted with bad faith so far as the corporation was concerned.

The only remaining point is whether the company commenced to transact the corporate business within one year after the filing of the certificate of incorporation.   The proof leaves no room for doubt on this point.   Within about six months the company purchased railroad iron of the value of

twenty-two thousand dollars, and within twelve months had expended over thirty thousand dollars in the prosecution of its enterprise. Up to the commencement of this action it had expended seven hundred thousand dollars towards the construction and equipment of its road. So far as appears from this record, the corporation was duly organized, and is entitled to exercise corporate powers.

Judgment reversed, and cause remanded for a new trial.

Mr. Justice RHODES, concurring specially:

I concur in the judgment.