Order reversed, and report of referee confirmed, with costs, to be paid by the estate. All concur.

---

(8 App. Div. 427)

FIRST NAT. BANK OF BALDWINSVILLE v. CONNELL et al.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

CORPORATIONS—LIABILITY OF DIRECTORS—FAILURE TO FILE ANNUAL REPORT.
    A note received by a corporation in violation of Laws 1892, c. 688, § 42, which forbids a corporation to issue stock except for money, labor, or property, is nevertheless valid in the hands of a person who advanced money to the corporation on the faith of the note, and therefore the obli-

gation of the corporation for the money advanced is one for which the directors are liable, where they fail to file the annual report as required by Laws 1892, c. 688, § 30.

Appeal from circuit court, Onondaga county.

Action by the First National Bank of Baldwinsville against Lansing W. Connell and another, as directors of the Syracuse Bamboo Furniture Company, a domestic corporation, to recover the sum of $1,000, alleged to be due from said company to plaintiff. The liability of defendants is sought to be established on account of an alleged failure to file the annual report required by Laws 1892, c. 688, (stock corporation law) § 30. Judgment was entered on a verdict in favor of plaintiff for $1,159.04 damages and costs, and defendants appeal. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

John Hogan, for appellants.
George H. Sears, for respondent.

ADAMS, J. This action is designed to charge the defendants, as directors of the Syracuse Bamboo Furniture Company, with liability for a debt of that corporation, by reason of its failure to file an annual report, as required by section 30 of the stock corporation law, within the month of January, 1892, or at any other time prior to the 30th day of January, 1893. The defendants, in their answer, admit the incorporation of the company, that they were directors thereof, and that the company had omitted to file its annual report within the period of time above specified. They also admit that neither of the defendants filed with the secretary of state a verified certificate stating that they, or either of them, had endeavored to have such annual report made and filed. But they deny the existence of any valid claim in favor of the plaintiff against either the Syracuse Bamboo Furniture Company, or against them as directors of such company. The plaintiff, in its complaint, alleges:

"That on or about the 18th day of July, 1892, and after the time for filing the annual report hereinbefore mentioned, and before it was filed, and before any annual report as required by law was filed, the said the Syracuse Bamboo Furniture Company became indebted to the plaintiff in the sum of $1,000 for and on account of money loaned and advanced by this plaintiff to the said the Syracuse Bamboo Furniture Company, which loan and advance was made on the said 18th day of July, 1892." "That as a security for said loan, and as an evidence of said indebtedness from the said the Syracuse Bamboo Furniture Company to this plaintiff, one Jacob C. Kenyon, then the president of said the Syracuse Bamboo Furniture Company, made, executed, and delivered a promissory note in writing, dated that day at Baldwinsville, N. Y., whereby he promised to pay, two months after date, to the order of the said the Syracuse Bamboo Furniture Company, the sum of $1,000, at the First National Bank of Baldwinsville, New York, for value received, with interest; and thereupon, and before the said note became due and payable by its terms, the said the Syracuse Bamboo Furniture Company, for value received, and for the purpose of securing said loan and advancement of $1,000, duly indorsed, transferred, and delivered to this plaintiff the said note, and that this plaintiff thereupon became, and now is, the holder and owner thereof."

Upon the trial it was made to appear by evidence which stands uncontroverted that Jacob C. Kenyon, who was the treasurer, and not the president, of the Syracuse Bamboo Furniture Company, was, at the time of the execution of the note mentioned in the foregoing allegation of the complaint, indebted to the company upon his stock subscription to the extent of $1,000; that the company was pressed for money with which to carry on its business; and that it was arranged between Kenyon and one Walter McMullen, who was the plaintiff's cashier, that, if the former would give his note to the company in payment of his stock subscription, the plaintiff would discount the same for the benefit of the company; that, in pursuance of this arrangement, Kenyon made and executed the note in question, and thereafter, as treasurer, indorsed the same in the corporate name of his company; and that thereupon the plaintiff took such note, advancing the amount secured thereby to Kenyon, who deposited the same to the credit of the company, which had the sole benefit thereof. It further appears that when the note matured the same was not paid, but was renewed, and was thereafter renewed from time to time until the 20th of September, 1894, when the last renewal note was given; each of such renewals being in form the same as the original note, signed by J. C. Kenyon, individually, and indorsed by the Syracuse Bamboo Furniture Company, "By J. C. Kenyon, Treasurer." The case, it will therefore be seen, presented to the trial court, for its determination, but a single question, and that a question of law, and not of fact; for it is conceded that if the plaintiff had a valid claim against the Bamboo Furniture Company for the money loaned upon the 18th day of July, 1892, these defendants are liable upon that claim, by reason of a violation of the requirements of the statute relative to the filing of the annual report of the company. The defendants insist, however, that the plaintiff's claim is one which cannot be enforced against the company, for the reason that the note which lies at its foundation was received by the company from the maker in direct violation of the statute. And in support of this contention the attention of the court is directed to section 42 of the stock corporation law, which reads as follows:

"No corporation shall issue either stock or bonds except for money, labor done, or property actually received by the use and lawful purposes of such corporation." Laws 1892, p. 1835.

It is undeniable that this provision of the statute does, in express terms, inhibit a corporation organized under the laws of this state from receiving in payment for either stock or bonds which it may issue anything except money, labor performed, or property which may be actually and lawfully used by the corporation receiving it in the conduct of its business. And the object of the legislature in enacting this inhibitory provision was undoubtedly to relieve the full-paid stock of every corporation from any lien or liability for the purchase thereof, in order that it might represent to the company, as well as to its creditors, the actual money value of its paid-up capital. Gamble v. Water Co., 123 N. Y. 91–107, 25

N. E. 201. It must be conceded, therefore, that in taking from Kenyon his note, instead of cash, for the amount due upon his stock subscription, the company did violate the provision of the statute already adverted to; and therefore the serious question to be considered is, how does this fact affect the note which was transferred to the plaintiff, and how does it affect the plaintiff's claim for the moneys advanced upon the security of that note? In determining this question it is to be borne in mind that this action is not brought, nor is it sought to be maintained, upon the note itself; for, as we have seen, it is expressly alleged that the plaintiff loaned and advanced to the Bamboo Furniture Company the sum of $1,000, and that the note was received simply as security for such loan, and as evidence of the indebtedness of the company. It is likewise to be remembered that the company has received the full benefit of the money loaned, for the repayment of which its directors are now seeking to escape liability. With these facts confronting us, we fail to see any good reason why the plaintiff should not prevail in its action. It is true, as has already been stated, that this note was given in direct violation of an inhibition of the statute; but the contract which it represents violates no general principle of public policy, and is in no sense what may be termed malum in se. At the most, it is merely malum prohibitum, and however this may affect the note, as commercial paper, in the hands of a third party with notice, it certainly does not work a forfeiture of the money loaned by the plaintiff, even though it knew at the time of making the loan that the security upon which it was made was, in a sense, illegal. Oneida Bank v. Ontario Bank, 21 N. Y. 490; Tracy v. Talmage, 14 N. Y. 162; Bank of Salina v. Alvord, 31 N. Y. 473; Pratt v. Short, 79 N. Y. 437. This statement of the law which I think applicable to the case may rest upon two principles, either one of which is sufficient to support it: In the first place, the guilty party—the one whose act was in direct violation of the law—was the corporation, which, through its treasurer, took the note, instead of money, for the stock which this same treasurer had purchased; and the only sense in which the plaintiff can be said to be in pari delicto was in taking a note thus executed, with knowledge of the circumstances attending its execution. This hardly makes the plaintiff equally guilty with the maker, but it rather presents a case in which the court may afford relief to the party whose guilt or responsibility is comparatively insignificant. Tracy v. Talmage, supra. But the second of the two principles to which reference has been made is one which is of pretty general application in cases of this character, and that is that, where a party has reaped the full benefit of a contract which has been performed in good faith by the other party thereto, he cannot be permitted to escape from his fulfillment thereof by insisting that in entering into such contract he violated the law. This principle has been applied to the defense of ultra vires in cases where, if that defense were to prevail, it would work injustice and accomplish a legal wrong; and it was thus clearly enunciated by Judge Allen in the case of Arms Co. v. Barlow, 63 N. Y. 62:

"It is now very well settled that a corporation cannot avail itself of the defense of ultra vires when the contract has been, in good faith, fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract. If an action cannot be brought directly upon the agreement, either equity will grant relief, or an action in some other form will prevail. The same rule holds e converso. If the other party has had the benefit of a contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate powers of the corporation."

To speak of corporate acts as ultra vires is but another way of saying that in those acts the corporation has exceeded its functions, or has gone beyond the legitimate scope of its power; and that is practically what the Bamboo Furniture Company did when it assumed to take Kenyon's note, instead of his money, in payment of his subscription for stock. And having taken the note, and used the same as a means of procuring money for carrying on its business, it would be the merest travesty of justice to permit it now, when called upon to perform its contract with the plaintiff, to insist that it should be relieved therefrom because, in taking the note from the maker, it exceeded the power conferred upon it by statute. We think that the learned trial justice committed no error in the direction made by him in this case, and that, therefore, the judgment appealed from should be affirmed.

Judgment affirmed, with costs.

FOLLETT, WARD, and GREEN, JJ., concur.

HARDIN, P. J. (concurring). The Bamboo Furniture Company having received the money of the plaintiff,—it having been placed to its credit, and drawn from the plaintiff,—an indebtedness arose thereby to the plaintiff. If it be assumed that the note taken by the company for stock was illegal, still the company remained indebted to the plaintiff for money had and received. When Pratt v. Short was on trial before me at the circuit, I had occasion to express my views upon the right of a party somewhat similarly situated to recover for money had and received, and my opinion is reported in 53 How. Prac. 506. That case passed on to the court of appeals, and the conclusion reached at the circuit was affirmed in 79 N. Y. 437. The same doctrine was laid down in Pratt v. Eaton, Id. 449, reversing 18 Hun, 293. In Duncomb v. Railroad Co., 84 N. Y. 201, those cases are referred to and approved. In Chapman v. Comstock, 58 Hun, 325, 11 N. Y. Supp. 920, affirmed 134 N. Y. 509, 31 N. E. 876, I again had occasion to refer incidentally to the same doctrine, and to cite some additional cases. I think the conclusion reached by ADAMS, J., in his opinion is correct, and I therefore vote to affirm the judgment.