### BOROUGH BANK OF BROOKLYN v. LAMPHEAR.

(Supreme Court, Appellate Division, Second Department. December 6, 1912.)

1. BILLS AND NOTES (§ 92*)—CONSIDERATION—SUFFICIENCY.

The president of a bank, who was the chairman of the organization committee of a trust company and solicited subscriptions for stock, induced defendant to subscribe for stock, and defendant executed a note to the bank for the price. The president gave defendant a receipt providing that it was exchangeable for certificates of stock. The note was a collateral one, stating that the security therefor was the stock of the company. Defendant left the note and receipt with the president, who took them to the bank, which loaned him money on the security of the same. The money was deposited to his account as chairman of the organization committee. On the same day the president withdrew from such account a specified sum, and deposited it to the credit of the account standing in the name of a third person, to make up the amount stolen from such account. *Held* that, since the trust company received the benefit of the money advanced by plaintiff bank on the security of the note, the company could be compelled to deliver the stock to defendant or to restore the price thereof, and therefore there was a sufficient consideration for the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 166–173, 175–212; Dec. Dig. § 92.*]

2. APPEAL AND ERROR (§ 1177*)—REVERSAL—DISPOSITION OF CAUSE.

Where additional evidence may throw light on the issues, the court on appeal will not, on reversal, render final judgment for appellant, but will order a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4620; Dec. Dig. § 1177.*]

Appeal from Trial Term, Kings County.

Action by the Borough Bank of Brooklyn against Amos Lamphear. From a judgment dismissing the complaint, and from an order denying a new trial, made on the minutes, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Edward M. Grout, of New York City (James F. McKinney, of New York City, on the brief), for appellant.

Conrad Saxe Keyes, of New York City (T. Ellett Hodgskin, of New York City, on the brief), for respondent.

HIRSCHBERG, J. The action is to recover on a demand note executed and delivered by the defendant to the plaintiff for the sum of $2,000. On October 9, 1907, the defendant was induced to subscribe

for 10 shares of the capital stock of the International Trust Company by one Howard Maxwell, who at that time was both president of the plaintiff and chairman of the organization committee of the Trust Company, in which latter capacity he was intrusted with the duty of soliciting subscriptions for stock. The defendant executed the demand note in question for $2,000, the price of the stock, and the note was made payable to the order of the plaintiff. Thereupon Maxwell issued and delivered to the defendant a receipt in full payment of 10 shares of the capital stock of the Trust Company, which receipt expressly provided that it was exchangeable for engraved certificates of stock when the same should be completed. The demand note was in form a collateral note, stating that the security therefor was the 10 shares of Trust Company stock subscribed for by the defendant. The defendant left the note and receipt with Maxwell, who took them to the plaintiff bank, which loaned $2,000 on security of the same. That money was deposited to the account of Howard Maxwell, Chairman; the same being an account kept by Maxwell in the plaintiff bank as chairman of the organization committee of the Trust Company.

On the day that this deposit was made, Maxwell withdrew $105,-000 from his said Chairman account and deposited it to the credit of an account in the plaintiff bank, standing in the name of Carrie M. McGuire. His action in so doing was owing to the fact that theretofore the sum of $145,000 had been stolen from the McGuire account and deposited by him with the Oriental Bank in order to make up the full amount of the capital and surplus necessary to enable the Trust Company to begin business. Subsequently to the repayment of this $105,000 to the McGuire account, Maxwell transferred $12,000 from the Chairman account to the McGuire account in further partial reimbursement of his misappropriations, leaving a balance in the Chairman account of only $900. The defendant has never demanded his 10 shares of stock in exchange for the temporary receipt.

[1] The learned trial justice directed the jury to find a verdict in favor of the defendant, on the sole ground that there had been no consideration moving to the defendant on the note. This, I think, was error. Since the decision and entry of judgment herein, the First Department of this court has passed upon certain facts growing out of the organization of the International Trust Company, in the case of Higginbotham v. International Trust Co., 141 App. Div. 535, at page 539, 126 N. Y. Supp. 366, at page 369. That was an action to recover money paid Maxwell by the plaintiff as a subscription to the Trust Company's capital stock. It appeared that Maxwell had used such money in precisely the same manner as he employed the $2,000 in the case at bar, namely, to partially reimburse the McGuire account for his previous withdrawals therefrom on behalf of the Trust Company. The court affirmed a judgment dismissing the complaint, and held that it was immaterial that the identical money paid by the plaintiff to Maxwell had not been received by the Trust Company, in view of the fact that such money had been used to replace money of which the Trust Company had received the benefit and for which it

was liable. Mr. Justice Miller, writing for the majority of the court, said:

"It is of no consequence that the identical money collected on the plaintiff's check did not reach the defendant. The money which was first stolen went into the defendant's treasury, and the defendant received the benefit of it. If that theft had not been made good, the defendant could have been compelled to repay the sum stolen. Maxwell repaid it by using $117,000 of the money received by him in payment for subscriptions to the defendant's stock. How the other $28,000 was refunded is now of no consequence. Thus the defendant's liability was discharged in part with the plaintiff's money, and it seems to me that it is refining altogether too much to say that the defendant did not have the benefit of that money. If it had in fact gone directly into the defendant's treasury, the case would be plain. That was the result of the transaction, if regard be had to substance, rather than form."

I think that the same rule must apply in the case at bar, and that the fact that the money advanced by the plaintiff on the security of the defendant's note was not directly paid to the Trust Company is immaterial, in view of the fact that the Trust Company has received the benefit of it. Upon these facts the Trust Company could be compelled to deliver the 10 shares of stock to the defendant, or to restore the purchase price thereof, and therefore the payment by the plaintiff to Maxwell's Chairman account on the credit of defendant's note and receipt has resulted in some benefit to the defendant, and constitutes a sufficient consideration for the note.

[2] The appellant asks to have final judgment directed in its favor on this appeal. As additional evidence might throw other light on the questions of oversubscription and its real relation to the transaction, the proof of oversubscription not being as clear and strong as it might be, and also knowledge on the part of the plaintiff beyond that which has been assumed, because of Maxwell's dual capacity, I think a retrial should be had.

The judgment and order should therefore be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.