## Appeal of HEWITT RUBBER CO.    Docket No. 325.

An interest-bearing demand promissory note of a responsible and solvent maker actually and in good faith paid in for stock of a New York corporation, constitutes invested capital, to the extent of its actual cash value at the time paid in, within the meaning of section 326 (a) (2) of the Revenue Act of 1918, notwithstanding the provision of section 29 of the New York Stock Corporation Law, that a note may not be received in payment of any installment, or any part thereof, due or to become due on any stock of such corporation, without personal liability of the officers or directors of the corporation receiving such note, for the amount thereof with interest.

The note for $1,000,000 received by this taxpayer on April 1, 1918, for stock, had an actual cash value on that date of the full amount thereof.

Submitted December 3, 1924; decided January 29, 1925.

*E. C. Gruen, C. P. A.*, for the taxpayer.

*J. D. Foley, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LITTLETON, and SMITH.

This appeal involves income and profits taxes for the year 1918 in an alleged amount of $45,821.66. The deficiency letter mailed to the taxpayer on August 7, 1924, covered the years 1918 to 1921, inclusive. There appears an additional tax of $85.68 for 1919, an overassessment of $74.95 for 1920, and no deficiency in tax for the year 1921. Only the tax for 1918 is in dispute.

There is little dispute as to the facts in the case. The answer of the Commissioner admits practically all of the material facts alleged. The issue presented is one of law. Taxpayer contends that a demand promissory note for $1,000,000 bearing 6 per cent interest given in good faith on April 1, 1918, by a responsible and solvent maker, who was also the president and a director of taxpayer, for stock, constituted invested capital to the extent of its face value from the date paid in, as tangible property bona fide paid in for stock, within the meaning of section 326(a)(2) of the Revenue Act of 1918.

Taxpayer makes two alternative contentions: (1) If the note should be held not to constitute invested capital from the date paid in, as contended by the Commissioner, the interest paid thereon during the year in the amount of $27,670.50 does not constitute taxable income of the corporation as defined in sections 232 and 233 of the Revenue Act of 1918, and should be considered as a sum paid to apply upon the purchase price of the stock and effect a purchase thereof at a price above par; (2) if the Commissioner's action in computing taxpayer's invested capital from the dates of actual payments made on the note given for the stock is approved, the sum of $1,000 paid on the granting of an option to purchase should be applied as the first payment on the stock issued.

The Commissioner controverts the contentions made by the taxpayer and insists that under section 29 of the Stock Corporation Law of New York promissory notes are not acceptable in payment for capital stock of a corporation; therefore, there is properly includable in invested capital only the amounts actually paid on said note for stock from the dates of actual payment thereof, and that interest payments made upon said note constitute gross income to the corporation.

From the admissions contained in the answer, oral testimony, and exhibits introduced by taxpayer the Board makes the following

FINDINGS OF FACT.

The taxpayer is a corporation organized and existing under the laws of the State of New York, with its principal office at Buffalo, New York. As of January 1, 1918, taxpayer had outstanding 10,000 shares of common stock, par value $100 each, of which H. H. Hewitt, its president, owned 7,429 shares. The total authorized capital then was $1,500,000, all common. Early in 1918 the authorized capital was increased to $3,000,000, being $2,000,000 of common and $1,000,-000 of 8 per cent cumulative preferred stock.

At a meeting of the directors held on February 26, 1918, an option was given to H. H. Hewitt, president and a director, granting to him

for two years the exclusive right to purchase any part or all of the unissued capital stock for cash at par, as follows:

Whereas, by appropriate action the capital stock of this corporation is being increased from $1,500,000 to $3,000,000 t consist of $2,000,000 Common Capital stock (being the present authorized capital stock, viz; $1,500,000 and $500,000 of the new stock) and $1,000,000 eight per cent (8%) cumulative preferred stock (being the balance of the new stock).

Whereas, all the stockholders of this Corporation have duly waived in writing their rights to subscribe to any part of said $2,000,000 of stock not yet issued, and

Whereas, H. H. Hewitt has asked this Board to grant him an option to purchase all of said unissued stock for cash, at par, to continue for a period of two years from this date, and in the opinion of this Board, it is for the best interests of this Company to grant him such option.

Now, therefore, be it Resolved that in consideration of the payment of $1,000 on account of such option (receipt of which is hereby acknowledged by this Corporation) an option is hereby given for a period of two years from the date hereof to H. H. Hewitt, his heirs and assigns, to purchase for cash, at par the entire amount of two million dollars ($2,000,000) of the unissued stock of this Corporation, or any part thereof, with the understanding that such payment of $1,000 already made by him shall be applied upon the purchase price of any stock purchased by him, his heirs or assigns under the terms of this option.

The consideration for this option was $1,000 paid by H. H. Hewitt to be applied against any purchase of stock made by him.

Under this option H. H. Hewitt purchased on April 1, 1918, all of the unissued 8 per cent cumulative preferred stock, consisting of 10,000 shares of a par value of $1,000,000, for which he gave the taxpayer his promissory note payable on demand and bearing 6 per cent interest. This note was accepted by the corporation, and Certificate No. 1 for 10,000 shares of fully paid 8 per cent cumulative preferred stock was issued to H. H. Hewitt under date of April 1, 1918, and registered with the corporation's transfer agent on April 15, 1918. At the time of issuance of this stock to H. H. Hewitt and the receipt by the corporation of the note for $1,000,000 the following entry was made in the general journal of taxpayer:

|  | Debit. | Credit. |
|---|---|---|
| Bills receivable | $1,000,000 | |
| To capital stock | | $1,000,000 |

Purchase of 10,000 shares preferred stock to Mr. H. H. Hewitt.

During the year 1918, H. H. Hewitt disposed of certain shares of this stock, and on December 31, 1918, he held 7,132 of the original 10,000 shares.

The ledger account, notes receivable, representing this note, shows credits as follows, being the monthly summary postings from the cash book:

| | |
|---|---|
| April 30 | $4,300 |
| May 31 | 61,000 |
| June 30 | 23,000 |
| July 31 | 52,000 |
| August 31 | 4,500 |
| September 30 | 10,000 |
| November 30 | 8,500 |
| December 31 | 836,200 |

The note of $1,000,000 was actually paid and retired during the year 1918, by payments shown in the cash book, as follows:

| | | | |
|---|---|---|---|
| April 25 | $4,300 | July 11 | $2,000 |
| May 7 | 2,000 | July 29 | 50,000 |
| May 8 | 3,500 | August 19 | 2,500 |
| May 13 | 500 | August 22 | 2,000 |
| May 16 | 50,000 | September 25 | 10,000 |
| May 27 | 500 | November 7 | 5,500 |
| May 31 | 4,500 | November 16 | 3,000 |
| June 13 | 5,000 | December 7 | 1,000 |
| June 18 | 6,000 | December 11 | 1,000 |
| June 27 | 5,500 | December 31 | 834,200 |
| June 28 | 4,000 | | |
| June 29 | 3,000 | Total | 1,000,000 |

H. H. Hewitt paid the taxpayer interest on this note as follows: July 1, 1918, $15,000; September 30, 1918, $12,670.50; total, $27,670.50.

H. H. Hewitt was at the time of making this note and at all times thereafter, solvent and financially responsible and able to pay the note in full on demand at any time from its date.

Regular quarterly dividends on this stock of $2 per share, or $20,000, were authorized by the directors, and paid July 1 and October 1, 1918, and January 1, 1919.

No purchases of stock other than the 10,000 shares hereinbefore mentioned were made by Mr. Hewitt under the option, and the $1,000 paid for the option was refunded by taxpayer on December 31, 1920, after the expiration of the option.

At the annual meeting of the stockholders held on January 20, 1919, the following resolution was passed: " Resolved, * * * That each and every official act and procedure taken and had by the directors of this company and by its elective officers since the last meeting of the stockholders be, and the same are, hereby in all respects, approved and confirmed."

The Commissioner, in computing the addition to invested capital from date of payments, determined the amount of $79,780.78 by using the dates shown in the ledger account, whereas the correct addition to invested capital predicated upon actual payments from the date received, as shown by cash book, is $84,016.44. The equated value of the $1,000 payment for the option is $753.42.

## DECISION.

The deficiency determined by the Commissioner is disallowed.

## OPINION.

LITTLETON: The first question to be decided in this appeal is whether the taxpayer is entitled, under section 326(a)(2) of the Revenue Act of 1918, in view of the provisions of the statutes of the State of New York, to have the face or full value of an interest-bearing demand promissory note given by a responsible and solvent maker in payment for an original issue of capital stock included in its invested capital from the date of the note or to have included therein only the payments made on such note from the dates of actual payments.

The facts surrounding the subscription of H. H. Hewitt for the 10,000 shares of stock of the Hewitt Rubber Co. and the method and manner of payment therefor, are not in dispute.

Section 326 (a) (2) of the Revenue Act of 1918 provides—

That as used in this title the term "invested capital" for any year means: (2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares at the time of such payment * * *.

Section 325 (a) of the same Act provides—

That as used in this title the term "tangible property" means stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property.

The sections of the Revenue Act of 1918 quoted, defining what shall constitute invested capital, were intended solely for the purpose of computing the amount of war-profits and excess-profits tax to be paid by corporations, and to apply to all corporations alike where cash or such property is *bona fide* paid in for stock or shares. The only limitation which Congress has placed upon the inclusion in invested capital of *cash* or *property* (which includes notes) paid in for stock or shares, is that the *cash* or *property* must be *bona fide* paid in. So in this appeal we have only to determine what Congress meant by the use of the words *bona fide paid in*.

The Commissioner admits the financial responsibility of H. H. Hewitt; admits that he was at the time of making the note for $1,000,000 and at all times thereafter able to pay the amount thereof on demand, and that the note was worth its face value. He does not deny that the purchase of this stock by Mr. Hewitt was a *real* transaction, or that the purchase by Mr. Hewitt and the sale by the corporation was in good faith and without fraud or collusion. It is contended by the Commissioner that *bona fide* as used in section 326 (a) of the Revenue Act is equivalent to and means *legally*. So he contends that Congress in using the words "bona fide paid in" authorized the inclusion in invested capital of corporations only property (including notes) legally paid in; such property as is authorized or sanctioned by the law of its domicile to be received by corporations in payment for stock or shares; that if the acceptance of the property (note) by the corporation in payment for stock is not strictly in accordance with the law of the State it is not "bona fide paid in" within the meaning of section 326 (a) of the Revenue Act of 1918. For this interpretation the Commissioner relies upon section 29 of the Stock Corporation Law of the State of New York in support of his disallowance from invested capital of taxpayer of the actual value of the note for $1,000,000 from April 1, 1918, and the inclusion of only actual cash payments thereon from the dates paid.

Before discussing the provisions of the New York Stock Corporation Law we will take up the interpretation of the words "bona fide paid in" used in section 326 (a) (2) of the Revenue Act of 1918. This section of the law is in no wise ambiguous, and the language used therein is to be construed in its ordinary and usual sense. To say that the words "bona fide" as used in the Revenue Act mean "legally" would be giving them a restricted meaning which we do not think Congress intended. "Bona fide" is synonymous with

"really, truly, actually, sincerely, in good faith, upon honor." The word "legal" is synonymous with "lawful, legitimate, legalized, authorized or sanctioned by law, according to law." (Soule's Dictionary of English Synonyms).

Congress must be presumed to have known when enacting section 326(a) that corporations are creatures of and regulated by statutes, and that in most, if not in all, States various restrictions as to the issuance of stock are imposed by statute. If it had been the intention of Congress that the invested capital of corporations for the purpose of the excess-profits tax should be determined strictly according to the laws of the various States, it would have used the words "legally paid in" instead of "bona fide paid in."

In the case of *Ware* v. *Hylton*, 3 U. S. (Dallas) 199, the court had before it for consideration a provision of a treaty between the United States and Great Britain, and Mr. Justice Chase, at page 240, said:

> But the debts contemplated were to be *bona fide* debts, that is, *bona fide* contracted before the peace, and contracted with good faith, or honestly and without covin, and not kept on foot fraudulently. *Bona fide* is a legal technical expression, and the law of Great Britain and this country has annexed a certain idea to it. It is a term used in statutes in England and in acts of assembly of all the States, and signifies a thing done really, with a good faith, without fraud or deceit or collusion or trust.

We think this language of the Supreme Court is applicable to the meaning the words *bona fide* as used by Congress in section 326 (a)(2) of the Revenue Act of 1918. Bouvier's Law Dictionary defined "bona fides" as "good faith, honestly, as distinguished from *mala fides*." This view is strengthened by the fact that Congress used the words "bona fide paid in" not only in respect to tangible and intangible property, but in respect to "cash paid in." The fact that Congress intended to allow as invested capital only actual cash "bona fide paid in" clearly indicates that Congress intended that cash and property in *reality* and *in good faith* paid in for stock should be included in invested capital. In the case of *Harriman National Bank* v. *Palmer*, (1916), 93 Misc. 431, 158 N. Y. S. 111, the court said:

> The policy of the law is that subscriptions to corporate stock shall be *bona fide* and that the interests of corporations and of those who, in good faith, contribute to their capital be conserved. It follows, therefore, that neither a promise to subscribe nor a conditional subscription is valid.

The evidence introduced by taxpayer clearly shows that the sale of the 10,000 shares of 8 per cent cumulative preferred stock by the taxpayer and the purchase thereof at par by H. H. Hewitt and paid for by his demand note for $1,000,000 was a real transaction, entered into in good faith, without fraud, deceit, or collusion; that the stock was actually and in good faith issued by the corporation to Mr. Hewitt; that the $1,000,000 demand note was carried on the books of taxpayer as an asset; that the regular quarterly dividends were paid on the stock, and that the entire note with interest was paid within the year. There is not a scintilla of evidence in the record to indicate that the purchase and sale of the stock was *mala fide;* not a real transaction, or that it was not entered into in good faith, and for the best interests of the taxpayer.

We reach the conclusion that Congress intended by the language used in section 326 (a) that for the purpose of computing the profits tax, notes in reality and without fraud or collusion paid in for stock should be included in invested capital unless such *sale* of stock is rendered absolutely void by positive statute.

We do not believe that the New York State statutes relating to the issuance and sale of stock in any way conflict with the conclusion reached because:

(1) Congress has laid down a rule in clear and unambiguous terms for determining invested capital of corporations and where all requirements of that rule are met, a State statute imposing certain restrictions upon corporations for the purpose of enforcing full payment for its stock, designed and intended to serve as entirely different purpose, can not operate to nullify the plain provisions of the Federal statute.

(2) The statutes of the State of New York do not make *void* a *bona fide sale* of an original issue of stock by a corporation paid for by a promissory note of a responsible and solvent maker. They were intended merely to circumscribe the transaction with certain restrictions to prevent fictitious sales, to enforce full payment of subscriptions and to make the directors and officers personally liable for the protection of stockholders and creditors of the corporation. Section 29 of the New York Stock Corporation Law provides:

Liability of directors for loans to stockholders.—No loan of moneys shall be made by any stock corporation, except a moneyed corporation, or by any officer thereof out of its funds to any stockholder therein, nor shall any such corporation or officer discount any note or other evidence of debt, or receive the same in payment of any installment or any part thereof due or to become due on any stock in such corporation, or receive or discount any note, or other evidence of debt, to enable any stockholder to withdraw any part of the money paid in by him on his stock. In case of the violation of any provision of this section, the officers or directors making such loan, or assenting thereto, or receiving or discounting such notes or other evidences of debt, shall, jointly and severally, be personally liable to the extent of such loan and interest, for all the debts of the corporation contracted before the repayment of the sum loaned, and to the full amount of the notes or other evidences of debt so received or discounted, with interest from the time such liability accrued.

A reading of this section discloses that its purpose is not to make *void* the issuance of stock for an interest-bearing demand promissory note of a responsible and solvent maker, or on a credit basis. Installment payments are specifically permitted by section 53. The purpose of section 29 is to enforce the obligation of stockholders to make good their subscriptions and to keep them good at all times and to make the officers and directors also personally liable for the protection of other stockholders and creditors of the corporation. This section can no more be held to forbid the use of such promissory notes as a part of invested capital of the corporation than it can be held to withdraw from the corporation a part of its invested capital in the event the stockholder borrows from the corporation in violation of such section. Since Congress has specifically provided that "Notes, and other evidences of indebtedness, bills and accounts receivable" (which include an obligation of a stockholder to pay) constitute invested capital, a section designed to protect and enforce that obligation by making certain transactions illegal can not be

construed as taking away from the stock the quality of invested capital merely because additional safeguards are thrown around the ultimate payment of the obligation so entered into.

If the officers of a New York corporation permitted a stockholder to borrow, contrary to section 29, the entire amount he had originally paid for his stock taking his note therefor (for which they would become personally liable), charging him with such loan on the books of the corporation, this fact would not deprive the corporation of any portion of its invested capital. How, then, can it be successfully argued that a transaction of exactly similar character, except that it relates to the original issue of the stock, can be held to deprive the corporation of a portion of its invested capital?

In the instant appeal the capital stock certificate for 10,000 shares was actually issued on April 1, 1918. In the general journal of the taxpayer "Bills Receivable" was debited with $1,000,000 on that date, and capital stock credited with a like amount accompanied by the following notation, "Purchase of 10,000 shares preferred capital stock to Mr. H. H. Hewitt"—all done with the assent and upon instructions of the purchaser who was president and a director of taxpayer, and with the assent and knowledge of the other officers and directors. Subsequently and before the end of the taxable year the entire amount was paid. It is obvious, therefore, that under section 29 Mr. H. H. Hewitt was not only liable as the purchaser of the stock for the $1,000,000, but, together with the other officers and directors, was liable as an officer and director for the full amount with interest and for all debts of the corporation contracted before payment. The fact of complete payment of the $1,000,000 within the year proves the good faith of the transaction at the time of giving the note.

No cases are cited and we find none specifically holding that a *sale* of the character here involved is *void*, when entered into in good faith, both parties thereto having performed acts to effectuate and carry out the contract, and the purchaser having made payments on the note for stock actually issued. In *Furlong* v. *Johnston*, 209 App. Div. 198. 204 N. Y. S. 710–716, it is stated:

It does not necessarily follow that, when the law prohibits an act, a contract made in contravention of it may be avoided. The Legislature may impose other penalties than declaring such contract void. *Harris* v. *Runnels*, 12 How. (U. S.) 79, 13 L. Ed. 901; *Pratt* v. *Short*, 79 N. Y. 437, 35 Am. Rep. 531. There are other penalties imposed here. An officer or director of a corporation, who issues stock contrary to law, may be punished criminally (Penal Law, sections 662, 664, subd. 3), and may become personally liable for receiving or discounting a note in payment for an installment due on stock (Stock Corporation Law, sec. 29), or in certain corporations, for debts incurred while the corporation is doing business before its capital stock shall have been fully paid (Id. sec. 20 [as added by Laws 1912, c. 351, sec. 1]). * * *

Such notes are held valid and collectible by receivers of insolvent corporations for the benefit of creditors (*Farmers' & Mechanics' Bank* v. *Jenks*, 48 Mass. [7 Metc.] 592; *Finnell* v. *Sanford*, 56 Ky. [17 B. Mon.] 748); by persons taking them for value without notice (*Willmarth* v. *Crawford*, 10 Wend. 341; *Ogdensburgh, C. & R. R. Co.* v. *Wolley*, *40 New York 118; *Washer* v. *Smyer*, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320); and by holders with notice and by the corporation itself (*Magee* v. *Badger*, 30 Barb. 246, affd. 34 N. Y. 247, 90 Am. Dec. 691; *Borough Bank of Brooklyn* v. *Lamphear*, 154 App. Div. 177, 138 N. Y. Supp. 864; *Vermont Cent. R. Co.* v. *Clayes*, 21 Vt. 39; *Stoddard*

v. *Shetucket Foundry Co.*, 34 Conn. 542; *Goodrich* v. *Reynolds*, 31 Ill. 490, 83 Am. Dec. 240; *First National Bank of Ottumwa* v. *Fulton*, 156 Iowa, 734, 137 N. W. 1019); although sometimes resort is had to circuity of action (*First National Bank of Baldwinsville* v. *Cornell*, 8 App. Div. 427, 40 N. Y. Supp. 850). See, also, Cook, Corporations (8th Ed.) section 20; Fletcher, Cyc. Corporations, section 3513.

The note so taken is regarded as another form of subscription or new promise, and an extension of credit by the corporation to the subscriber. Cook, Corporations, supra; Fletcher, Cyc. Corporations, supra. At common law it was not illegal to give credit for stock issued. *Wheeler* v. *Millar*, supra; 14 C. J. 439. If prohibited now, it is not because it is malum in se. *First National Bank* v. *Cornell*, supra. At best the note would not be wholly void, but voidable only. *Weeks* v. *Bridgman*, 159 U. S. 541, 547, 16 Sup. Ct. 72, 40 L. Ed. 253.

Again, at page 712, it is stated:

It is not fully settled in this State just what effect the violation of such statutory provisions has on the contract. The provisions in statutes and in constitutions relative to the issuance of stock differ somewhat in language in the several jurisdictions, but in general are the same in effect. Generally speaking, a note is personal property, particularly the note of a solvent person, and in many jurisdictions is held valid when given on a subscription for stock. *Pacific Trust Co.* v. *Dorsey*, 72 Cal. 55, 12 Pac. 49; *Meholin* v. *Carlson*, 17 Idaho, 742, 107 Pac. 755, 134 Am. St. Rep. 286; *Schiller Piano Co.* v. *Hyde*, 39 S. D. 74, 162 N. W. 937; *German Mercantile Co.* v. *Wanner*, 25 N. D. 479, 142 N. W. 463, 52 L. R. A. (N.S.) 453; 14 C. J. 439; Cook, Corporations (8th Ed.) section 20.  *  *  *.

The object of the statute and the result to be obtained are that the corporation shall become vested with assets, so that strangers dealing with it and stockholders may be protected. *First National Bank* v. *Fulton*, supra. Although the statute may use the word " cash," the form of the payment, either the 10 per centum on subscription or the whole amount, is unimportant. An equivalent is sufficient. *Matter of Staten Island Rapid Transit R. Co.*, 37 Hun, 422, affd. 101 N. Y. 636; Id., 38 Hun 381; *Rodgers* v. *H. S. Kerbaugh, Inc.*, (Sup.) 190 N. Y. Supp. 245; *Lee* v. *Cutrer*, 96 Miss. 355, 51 South. 808, 27 L. R. A. (N. S.) 315, Ann. Cas. 1912B, 478; *People* v. *Stockton & V. R. Co.*, 45 Cal. 306, 13 Am. Rep. 178.  *  *  *

A mere promise or conditional agreement to subscribe for capital stock has been held void. *General Electric Co.* v. *Wightman*, 3 App. Div. 118, 39 N. Y. Supp. 420. It may be that, as between the corporation and the subscriber for original shares, there being nothing but a bare subscription, without the equivalent of a cash payment, the subscription agreement is void (*New York & Oswego M. R. Co.* v. *Van Horn*, 57 N. Y. 473; *Van Schaick* v. *Mackin*, 129 App. Div. 335, 113 N. Y. Supp. 408),  *  *  *.

A note of no value, or of doubtful value, would not constitute assets; but in this case the maker was responsible.

The Commissioner calls attention to section 53 of the New York Stock Corporation Law which provides that " every subscriber shall pay in cash 10 per cent upon the amount subscribed by him," and to section 55, which provides that " no corporation shall issue either shares of stock or bonds, except for money, labor done, or property actually received, for the use and lawful purpose of such corporation."

Section 53, which requires the payment of 10 per cent of the amount subscribed is immaterial in this case. Ten per cent of the purchase price was paid within four months, and the full amount of the note given for the stock was paid within the year. A subsequent payment satisfies this section. *Black River & Utica R. Co.* v. *Clarke*, 25 N. Y. 208; *Ogdensburgh C. R. Co.* v. *Wolley*, 40 N. Y. 118; *Excelsior Grain Binder Co.* v. *Stayner*, 25 Hun, 91; *Primos Chemical Co.* v. *Fulton Steel Co.*, 266 Fed. 937; *Miles* v. *Friedman*, 181 N. Y. S. 285, at page 294.

In the case of *Jeffery* v. *Selwyn*, 220 N. Y. 77, 82; 115 N. E. 275, 276, (6. A. L. R., 111), it is said:

Subscriptions not accompanied by immediate cash payments have not, however, been held void. A subsequent payment will suffice, even though it is made through the medium of services rendered the corporation. *Beach* v. *Smith*, 30 N. Y. 116. The statute does not prohibit or forbid anl other mode of subscription, and this court said in *Buffalo & J. R. R. Co.* v. *Gifford*, 87 N. Y. 294, 300 that " We are inclined to the opinion that it was not intended by this section to prescribe a fixed statutory mode of making a subscription, and that any contract of subscription good and valid at common law is still valid, notwithstanding this section."

Likewise we are of the opinion that the provisions of section 55 of the New York Stock Corporation Law has no bearing on this case. Although a note was given the corporation actually received the money. The note had an actual cash value of $1,000,000 at the time paid in and satisfies section 326(a)(2) of the Revenue Act.

We find nothing in the New York law which would make the stock issued in this case void. This was not a mere subscription but was a purchase of stock. The contract which this note represents violates no general principle of public policy and is in no sense what may be termed *malum in se*. *First National Bank of Baldwinsville* v. *Cornell*, 8 App. Div. 427; 40 New York Supp. 850. The debt which the note of $1,000,000 represents, for which the stock was actually issued, was at all times fully collectible from Mr. Hewitt, the purchaser, and also as a director, as well as from the other officers and directors. Even though there might have existed as between the parties certain defenses in the event of refusal of the maker to pay and an attempt to recover on the note, the corporation nevertheless had as an asset a valid and enforceable account receivable for the stock issued from a responsible and solvent debtor, safeguarded by personal liability of the directors.

Had taxpayer sold this note for $1,000,000, which it could have done, no question could now be raised as to the inclusion thereof in invested capital. In the event of insolvency the defense of illegality could not be availed of to defeat the rights of creditors.

In order to exclude from invested capital a note given in good faith for stock issued, it is not enough to point to a defense which might be interposed as between the parties in the event of a suit on the note. It must be shown that the sale was *void* and not enforceable, or that the purchase of the stock and the giving of a note was in bad faith and for the purpose of evading the provision of the revenue law—neither of which is true in this case.

We are therefore of the opinion under the facts in this appeal that the demand promissory note of H. H. Hewitt was tangible property bona fide paid in for stock issued to him; that it had an actual cash value of $1,000,000 at the time paid in, and constituted a part of taxpayer's invested capital within the meaning of section 326(a)(2) of the Revenue Act of 1918.

Since it is held that the note in question constituted invested capital from the date paid in for stock to the full amount thereof, the interest paid thereon constituted income to the taxpayer, and the $1,000 paid at the time of the option and refunded in 1920, is not a part of invested capital for 1918.