BOSTON OLDSMOBILE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11239.   Promulgated April 22, 1929.

*Frank J. Albus, Esq.,* and *James V. Giblin, C. P. A.,* for the petitioner.

*Arthur H. Fast, Esq.,* for the respondent.

OPINION.

TRUSSELL: In respect to the first issue the record shows that certain stock of petitioner was sold at par for interest-bearing negotiable notes of solvent purchasers given in good faith and worth their face value and that these notes were later paid in full with interest, by the makers. Petitioner is entitled to include the sum of these notes in its invested capital from the date received. *Hewitt Rubber Co.*, 1 B. T. A. 424; *Langley & Michaels Co.*, 9 B. T. A. 1020; *Globe Outlet Co.*, 10 B. T. A. 165; *Sheridan Meat Co.*, 10 B. T. A. 211; *Kaufman & Co.* v. *Bowers*, 11 Fed. (2d) 662.

The second issue is upon the refusal of respondent to permit adjustment of the inventories of petitioner for 1919 and 1920. The record shows that petitioner on December 31, 1919, took its inventory upon the basis of cost. This inventory it reported as:

| | |
|---|---|
| New cars | $146, 004. 79 |
| Parts | 44, 270. 47 |
| Used cars | 25, 483. 53 |

It now asks to adjust that portion of this closing inventory representing 75 new cars included in the total of $146,004.79, by a reduction amounting to 25 per cent of the cost of such cars, on the ground that these, although new cars, were superseded at that time by a new model which made it impossible to realize on them a normal sale price. Respondent insists that having elected in that year to take its inventory upon the basis of cost, and having done so, petitioner is now bound by that election and can not now change the basis, no matter what condition it may show in respect to actual market value.

Aside from the question raised by respondent, it is apparent that the adjustment asked for the year 1919 can not be allowed, as petitioner only seeks to adjust to cost or market a portion of its inventory. No such request is made as to the inventory of "used cars," although we can assume that a considerable portion of such inventory represents cars taken in on trades shortly before the date of

the inventory and during a period when the record shows petitioner engaged in disposing of its new cars of the superseded model, on which deals it is testified prices were allowed for old cars traded in at figures largely in excess of those normally allowed, and consequently these used cars are given a cost much in excess of their market value. Petitioner can not use one basis for a portion of its inventory and another basis for the balance. It can not write down to market certain of its stock on hand and include at cost a balance which has a market value below such cost. *James H. Bunce Co.*, 1 B. T. A. 848.

A different condition exists as to 1920, as petitioner took its closing inventory on the basis of " cost or market." Its request to adjust that inventory by a reduction of 25 per cent of the cost of 123 new cars of superseded models then on hand, in the place of the write-down of $25 per car made in the inventory taken, does not involve a change of basis, but merely an adjustment in the valuation placed on the inventory.

Section 203 of the Revenue Act of 1918 provides:

That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Article 1582 of Regulations 45, as amended by Treasury Decision 3296, in prescribing the rules provided for by the section quoted permits the taking of inventory upon the basis of (a) " cost " or (b) " cost or market whichever is lower," and further provides:

Any goods in an inventory which are unsalable at normal prices or unsalable in the normal way because of damage, imperfections, shopwear, changes of style, odd or broken lots, or other similar causes, including secondhand goods taken in exchange, should be valued at bona fide selling prices less cost of selling whether basis (a) or (b) is used, * * *. Bona fide selling price means actual offerings of goods during a period ending not later than thirty days after inventory date * * *.

The record shows that the cars constituting the item upon which petitioner asks adjustment were those of the prior model of which no more were obtainable from the manufacturer, and consequently there was no purchase market existing in December 31, 1920, for such cars upon which a comparison of acquisition cost to acquisition market could be had and consequently such adjustment as could be made would be one under the provision of Regulations 45 quoted above, as a decrease in normal retail selling value due to change of model or style and to be determined by actual sales during the 30 days next following the taking of the inventory. In this connection

an examination of the list of sales made during January, 1921, as set out in the findings of fact, will show that not in one instance was a sale made below cost or at less than a substantial profit, and although a schedule introduced in evidence by petitioner carries in each instance an amount opposite the actual sale price stated to be the "normal sale price" and the figures shown are in excess of the price actually received, we can not find that the so-called "normal sale prices" are those anticipated to be realized at the time of acquisition of the cars. In fact, this is shown not to be the case, for in most cases the date of the sale "price list" is given and in the cases of only three cars is the normal sale price a list price of 1920, and even in that case it is one from a list dated October 1, 1920, which according to the record was subsequent to the bringing out of the new model car. In respect to the other 120 cars involved, petitioner is comparing the price at which they were sold with list prices of 1921, and in some cases, 1922. The fact that a car purchased by petitioner in 1920 for resale did not bring when sold in 1921 the normal sale price in effect for such a car in 1922, is not evidence that at the close of 1920 its actual resale value was below its normal resale value for 1920.

There was considerable evidence introduced by petitioner to the effect that the bringing out of a new model by the manufacturer would have the general effect of making less salable cars of the former model on hand. This testimony was all general in character, and we can readily see that where prices on the new model were the same, such would be the result. But it is also evident that on a rising market, where the list prices of the new model were in excess of the old, the sale value of new cars of the old model might not be decreased at all, and in fact might be increased, and in the cases of the cars involved in this inventory we have no testimony on any single car showing its actual sale for an amount less than it would normally have brought if sold in 1920.

Upon the record we hold that petitioner is not entitled to adjust its inventories for 1919 and 1920 as requested.

Petitioner introduced no proof in respect to the facts alleged in support of its assignment of error upon the refusal of respondent to prorate a portion of the profit earned in 1919 to the period December 5 to December 31, 1918, and appears to have abandoned the issue raised thereby.

The deficiencies should be recomputed in accord with the foregoing opinion and findings of fact.

*Judgment will be entered pursuant to Rule 50.*